## UTAH FIRE CLAY CO. v. INDUSTRIAL COMMISSION et al.

No. 5470.   Decided January 10, 1935.   (40 P. [2d] 183.)

1

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Attorney General, and *Shirley P. Jones,* of Salt Lake City, for defendants.

FOLLAND, Justice.

This case is here on certiorari to review the decision of the Industrial Commission of Utah awarding compensation to Wilbert I. Franklin, to be paid by the plaintiff, Utah Fire Clay Company, or its insurance carrier, the State Insurance Fund.

The company contends Mr. Franklin was an employee of R. S. James, an independent contractor, and that it is not liable for the payment of compensation to the employee for an injury sustained by him in the course of employment. That the employee was injured by accident in his employment is not questioned, and the controlling facts are referred to later in this opinion.

This case is controlled by Comp. Laws Utah 1917, § 3110, as amended by Laws Utah 1919, c. 63, p. 156. The section has been reenacted with slight verbal changes, and is now R. S. Utah 1933, 42-1-40. The part of the section applicable here reads:

"Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and the work so procured to be done is a part or process in the trade or business of said employer, then such contractor and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this Section, employees of such original employer. Any person, firm or corporation engaged in the performance of work as an independent contractor, shall be deemed an employer within the meaning of this Section. The words 'independent contractor,' as herein used, is defined to be any person, association or

corporation engaged in the performance of any work for another, and while so engaged, is independent of the employer in all that pertains to the execution of the work is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design."

The last part of the quoted paragraph specifies that independent contractors are employers, and defines the term "independent contractor." The first part of the paragraph indicates what persons operating under contract with an employer are not independent contractors, but are employees for the purposes of the act, notwithstanding the relationship between the parties may be evidenced by oral or written contract. To determine whether such contractors and their employees are to be regarded as employees within the statutory provision, a twofold test is supplied: (1) Is the work a part or process in the trade or business of the employer? And (2) does the employer retain supervision or control over the work of the contractor?

The question for determination is, not whether R. S. James was a contractor, but whether, notwithstanding the contract relationship which is clearly shown and which might be characterized by some of the elements incident to the relationship of independent contractor, it is such a relationship as is covered and referred to in the first sentence of the quoted section of the statute as distinguished from the status of independent contractor defined in the latter part of the section. Such a contract is entirely proper and not in any sense unlawful. There is not anything in the statute which would prevent the company from having its delivery work done under and pursuant to such contract arrangement. The Legislature, however, undertook by this section to provide that workmen engaged in certain kinds of contract employment should have the benefit of the Compensation Law, and has provided that such workmen are, for the purposes of the act, to be regarded as employees of the contractee.

Here there can be no doubt that the work of the delivery of its product to its customers and the transportation of its finished or unfinished product or other material within its plant or from one part of the plant to another is "a part or process" in the "trade or business" of the company. The only substantial conflict between the parties turns on the question of whether the company "retains supervision or control" over the work of the contractor and his employees. As to this, there is little conflict in the testimony, but mainly in the inferences and conclusions drawn from the facts in evidence. This may well be regarded as a border line case, but, since each case must be decided on its own facts, a close case must be determined as the facts peculiar to it may require.

Six or seven years prior to the hearing, the company entered into an oral contract with R. S. James to furnish trucks and truck drivers to do all its transportation and delivery service. During that period two trucks with drivers were furnished for the work. The contract by its terms did not specify what, if any, control or supervision was retained by the company over the contractor and his employees. It was general in its nature, and merely provided that the work be done for certain specified rates of pay based on the size and character of materials hauled and the length of the haul. The applicant was paid by James one-sixth of the total earnings of the two trucks. Mr. James did not himself operate either of the trucks. Franklin, the applicant, and another operator named Sandstrom operated the two trucks and reported daily to the shipping clerk of plaintiff. All deliveries were made under his direction. The transportation of materials between parts of the company's plant or within the plant was done under the direction of the plant superintendent. While James was the owner of four trucks, during the last two years only two of them were licensed and operated, and he employed practically his whole time in the operation of a chicken farm, leaving supervision of the trucking business to others. The

daily transportation of the products of the company by the same persons engaged almost exclusively in that employment is quite different from the occasional transportation of its products by independent draymen who hold themselves out to serve the public whenever called. The relationship shown by the evidence is one extending over a period of years in which the applicant devoted himself almost exclusively to the work of the company under very close supervision and control, as to the work done for it, by its shipping clerk and plant superintendent. The following excerpts from the evidence indicate in a general way the kind of supervision that was exercised. Mr. James testified as follows:

"Q. Of late years about all you have done with reference to trucks is to tell the boys to go down to the Fire Clay Company and go to work, and they have got their checks from you? A. I never had to tell them. They always go there, and Mr. Nowatny (plaintiff's shipping clerk) lets them know if he wants something hauled early in the morning, or if there is nothing to do much the next day. They work together."

Plaintiff's manager testified:

"Q. Did the Utah Fire Clay ever at any time attempt to exercise any control over the details of the work of trucking or the way the trucking should be done, or anything in connection with the matter of transporting the Utah Fire Clay Company's materials? A. Of course we naturally are anxious to see that our material is delivered.

"Q. Certainly. A. Outside of the general routine that would naturally come up in a case of that kind, no.

"Q. You had nothing to do with the work, and never gave any direction about it? A. Except as a superior in the way he would handle those jobs."

That the company exercised such control and supervision over the manner and method of the work as to make the contractor's employees, under the provisions of the statute quoted, employees of the company for the purpose of providing compensation under the act, is sufficiently shown by the evidence to justify and support the findings and conclusions of the Industrial Commission.

The particular facts in this respect found by the commission are indicated by the following finding:

"That the applicant on December 6th, 1932, and during the past six or seven years, was one of the drivers of one of the trucks engaged in the said work of and for the Utah Fire Clay Company; that all the defendant R. S. James did was to provide the truck and the driver, furnish the gas and oil and repairs on the truck and pay the driver as aforesaid; that R. S. James exercised no control, direction or jurisdiction over the drivers of the trucks in any of the work they did for and on behalf of the Utah Fire Clay Company; that the drivers of the trucks kept the trucks at their homes and proceeded directly from their homes to the yards and plant of the Utah Fire Clay Company upon commencing their day's work, and returned from said plant and yards directly to their homes with the trucks at the end of each day's work, and worked exclusively at and for the Utah Fire Clay Company in hauling and delivering its products and in work around its yards and plant; that the Utah Fire Clay Company controlled the actions of said drivers and directed them in the work they were to do, where they were to go, when they were to come to work, when they were through work, whether or not they could take vacations, what articles they were to haul and deliver, and when and where; that the said drivers returned after each trip to the Utah Fire Clay Company's plant for further orders and directions; the truck drivers had no right or option to refuse to do any of these things or to follow any directions given them by the Utah Fire Clay Company; that the Utah Fire Clay Company was the exclusive judge of when its work should be done by the truck drivers and the manner in which it should be done and that neither the truck drivers nor R. S. James had any control, direction or authority in such matters; that in addition to driving the trucks in making deliveries and in hauling products the Utah Fire Clay Company required the truck drivers to make C. O. D. collections for materials delivered and hauled, which the truck drivers did, and turned the money so collected over to the Utah Fire Clay Company; that the truck drivers also did work around the yards whenever directed by the superintendent of the Utah Fire Clay Company so to do, and all this work was directed exclusively by the Utah Fire Clay Company and was required of it from said truck drivers; that frequently the Utah Fire Clay Company even directed the route that the drivers should take in making deliveries and hauling products for the Utah Fire Clay Company; that as heretofore stated, the applicant was at all times during the past six or seven years, and on December 6th, 1932, the date of the accident in question, one of aforesaid truck drivers specified in these findings."

Under the contract and the other evidence before the commission it was apparent that the work James contracted to do was "a part or process in the trade or business" of the company, and that the company retained the right of supervision and control over the work and every process and detail connected therewith. The test, ■ of course, is the right of the employer to supervise or control, whether such control or supervision is exercised or not. The evidence shows the company not only claimed such right, but actually asserted it at its pleasure, and that James and his employees recognized the right of the company so to do. They acquiesced therein by compliance with orders, directions, and suggestions made by the shipping clerk and plant superintendent of the company.

The test of the statute having been met, it is not controlling that Franklin was paid by way of commission instead of a salary or wage, that he received part of the commission paid to James, or that he may have been employed or might be discharged without the consent of the company having first been obtained, or that the truck he used did not belong to the company. *Eng-Skell Co.* v. *Ind. Acc. Comm.*, 44 Cal. App. 210, 186 P. 163. The statute provided that, where the stated conditions exist, the contractor, his employees or subcontractors "shall be deemed, within the meaning of this Section, employees of such original employer." The statutory provision which we have quoted has practically no vitality, unless it is applicable to a situation such as disclosed by the record in this case.

In *Grabe* v. *Industrial Commission*, 38 Ariz. 322, 299 P. 1031, 1034, the court, in construing a section of the Arizona law which is in almost the identical language of the quoted part of our statute, says:

"A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensa-

tion. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple, and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question."

The award of the Industrial Commission is affirmed.

ELIAS HANSEN and MOFFAT, JJ., concur.

EPHRAIM HANSON, Justice.

I dissent. The Utah Fire Clay Company, herein referred to as the company, contends that Mr. Franklin was an employee of R. S. James, an independent contractor. On the other hand, the defendant Franklin asserts that he was an employee of the company. This presents the sole question before us. The accident and injury are not questioned.

It appears from the evidence that Mr. James, approximately six years before the accident, entered into a parol agreement with the Company whereby he agreed to do all its hauling and delivery work incident to its business. The contract price to be paid therefor with some exceptions was fixed by certain schedules of prices; the rate being varied according to weight, dimensions, and type of the material and the distance it was to be hauled.

It definitely appears that trucks were used exclusively in doing the transportation work. Two trucks were sufficient, except on very infrequent occasions when there was some extra hauling to be done, and, when that occurred, Mr. James called in some other trucking concern to assist during the emergency. Except for the trucks thus occasionally employed, Mr. James owned the trucks used in doing the hauling, and furnished all the gas and oil consumed by their operation, and paid for the repairs incident thereto.

Before entering upon the performance of his contract

obligations, Mr. James arranged with defendant Franklin to become the driver of one of the trucks. For his services so rendered he was to be paid one-third of the amount which Mr. James was to receive for the truckage hauled by defendant Franklin. He admits that he was so paid by Mr. James; payment being made biweekly. Mr. James at about the same time procured the services of Mr. Sandstrom as the driver of the other truck under the same arrangement. The quantity of truckage hauled by each driver was kept in separate accounts for some time, presumably by the shipping clerk of the company. The accounts being approximately equal, the practice of keeping separate accounts for each driver was discontinued, and each driver was thereafter paid one-sixth of the total amount received by Mr. James for the truckage hauled by both trucks.

The drivers appeared at the company's plant, generally about 8 or 8:30 o'clock in the morning, each with his own truck. They were then told, if they had not already been so informed the evening before, what orders there were to be delivered and where and to whom the deliveries should be made. Each driver loaded his own truck, and, after making the delivery, he would report back for other deliveries. Where the freight consisted of any article too heavy for the driver to load, which defendant Franklin says was infrequent, some employee of the company who might be near would assist the driver in loading such article. There were no fixed hours that constituted a day's work. The driver's day might vary from two or three hours to as much as twelve hours, depending upon the amount of truckage to be hauled and the distance to the various points of delivery. This, of course, depended upon the orders received by the company and the time delivery thereof was to be made. At the close of the day's work each driver, for his own convenience and with the consent of Mr. James, took his truck to his own home.

The foregoing are the salient facts exhibited by the record. Before the Industrial Commission, the burden was on

defendant Franklin to show by a fair preponderance of the evidence that he was an employee of the company in order to entitle him to compensation. The commission found that he had sustained such burden, and accordingly awarded him compensation. On this review, however, we simply ask: Is there some competent evidence in the record to sustain a finding that Mr. Franklin was an employee of the company?

Two tests are here pertinent: (1) The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done and the way and manner in which it shall be done. (2) Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to results, the employment is an independent one establishing the relation of contractee and contractor, and not that of master and servant.

The distinguishing criterion is the right to control the manner of accomplishing the results; it is necessary that there be an actual exercise of control. *Mooney* v. *Weidner,* 102 Pa. Super. 411, 157 A. 23.

By reason of his contract with the company, Mr. James undertook to carry and haul the material of the company whenever in the line of its business it had orders to fill and hauling to be done. Mr. James was in the trucking business, and, with respect to the hauling to be done for the company, that was the business and pursuit of Mr. James. The company's sole interest was in having its materials transported to its patrons at the point called for by them. It is plain that the company's interest was a matter of results. There may be an inference that in contracting with Mr. James the company and Mr. James had in mind that trucks should be employed in doing the transportation work, but there can be no such inference drawn from the evidence that Mr. Franklin was to be one of the drivers. That choice rested solely with Mr. James.

Defendant Franklin admits that Mr. James employed him and that he also paid him. It is not disputed that his name does not appear on the company's pay roll. He admits that his services might be terminated at the will of his employer. He thought that either Mr. James or the company had the right to dismiss him or that it might require the joint action of both Mr. James and the company. The officers of the company disclaim any such right or authority. The evidence of this feature of the case admits of but the one conclusion—that Mr. James had the right to remove and discharge him. Further than to point out and designate to the truck drivers what articles and material should be hauled on any trip and to whom and to what places such articles and materials should be delivered, the company did not assume to direct or control the movements of the trucks or the manner in which they should be driven. When the applicant was asked if the company had exercised any authority over him "as to how you should drive the truck" in making deliveries, he gave the commission this information: "* * * Stuff that was very delicate not to drive roughly and break it." This is the nearest approach reached in the applicant's case tending to show that the company actually exercised control over the drivers in respect to the manner of accomplishing the result contemplated by the agreement made with Mr. James. This amounts to no more than a mere notice of the breakable quality of the article transported. Furthermore, to handle the freight and transport the same with reasonable care to avoid breakage is an implied obligation incurred by Mr. James. The applicant testified that Mr. James did not tell him what to do or exercise any control over his work. It should be observed that when, as here, the trucks were put in the hands of experienced and skillful drivers, the very nature of the trucking business admitted of but slight opportunity for Mr. James to exercise any more actual control over his drivers than what the record shows that he did exercise. However, in respect to this feature of the case, it does appear, and the same is not contradicted,

that during the time Mr. James was engaged in trucking for the company he undertook to do some hauling for the Wasatch Chemical Company in delivering acid to the plants of various sugar companies. He also did some hauling for the National Development Company and some other trucking work. On these different jobs defendant Franklin, driving the same truck for Mr. James did the hauling and received the same rate of compensation for his services. Mr. James undertook to do this extra hauling, and directed his drivers to do it.

In the situation thus presented, defendant Franklin, whether he was hauling materials for the company or engaged in doing the extra hauling for the other concerns mentioned, was standing in the identical position that Mr. James would have been in had he chosen to drive his own truck. Will any one contend that, had Mr. James seen fit to drive his own truck in any of the transportation work for the company, he would have been an employee of the company? The evidence in respect to the right of control is not disputed by any statement of fact found in the record.

Controlled by our test, we have a record that shows Mr. James had the right to and did select defendant Franklin for one of his drivers; that he had the power to remove and discharge him; that he had the right to direct on what jobs he was to be engaged; and that, when so engaged for the company or any other concern, Mr. James had the right to control the way and manner the trucking should be accomplished; and that defendant Franklin always received his pay from Mr. James. Aside from the incompetent conclusions of defendant Franklin to the effect that the company exercised control of the way and manner of doing the transportation work and his hearsay statements in respect to the company's right to remove and discharge him, there is no dispute concerning the foregoing facts. The question, therefore, is one of law. In my opinion, there is no competent evidence to support the finding that Franklin was at the time of his injury an employee of the company. On the con-

trary, all the competent evidence shows that he was an employee of Mr. James. I think the award should be annulled.

STRAUP, Chief Justice (dissenting).

I concur in the views expressed by Mr. Justice EPHRAIM HANSON.