The opinion of the Court was drawn up by
Cutting, J.
It appears that the plaintiff, having an unsatisfied judgment against one Samuel Sticleney, on May 17, 1854, employed A. P. Oakes, an attorney at law, to commence a suit thereon against him and John II. Kennedy, Ksq., as his trustee; that, after due service and, while the suit was pending, viz., on August 5, 1854, Slater, one of the defendants, gave to Oakes the following memorandum, to wit: —
"Mr. Oakes, Sir: — I will be accountable to Mr. Castner for the amount of the execution in his favor v. Samuel Stickney, and will pay the same whenever Stickney’s money is paid to him from Mr. Kennedy.” To this is added a postscript by Calvin Starret, the other defendant, as follows : —
"Mr. Oakes, Sir: — I will be accountable with Mr. Slater *213 according to the above writing.” Upon the reception of which, and in consideration thereof, the plaintiff’s suit was discontinued.
It further appears that Kennedy, at the time service was made upon him as trustee, was the administrator of one Jonathan Stickney, deceased in 1850, leaving his father, Samuel Stickney, his sole heir; that Kennedy, in 1852, had received from the sale and earnings of the intestate’s interest in the brig .Denmark, between three and four hundred dollars ; that, in 1856, he settled his administration account with the Judge of Probate, to whom he exhibited Samuel Stickney’s receipt for the balance due after deducting his expenses, as a voucher; although the money was suffered to remain in his hands, he having given his note for the same to one Christian Bornheimer, who married Samuel Stickney’s daughter; the note has never been paid, and there is no evidence that payment lias ever been demanded.
In defence it is contended, first, that the memoranda, as signed by the defendants, do not constitute them joint promisors as alleged in the writ, but we think otherwise. Slater says : — "I will be accountable to Mr. Castner;” and Starret says : — "I will be accountable with Mr. Slater according to the above writing.” If one man is accountable with another to perform a contract, it is difficult to perceive why they may not be legally considered as joint contractors. The legal effect of Starret’s postscript is the same as if he had signed 1ns name to the writing above, under Slater’s, so far as it respects the plaintiff, who has declared accordingly.
In the second place, it is urged that there was no consideration for the promise. This point is entirely unsupported, because, upon the strength of that promise, the plaintiff discontinued his suit then pending against Samuel Stickney and his trustee, when, otherwise, he had a fair prospect of ultimately recovering his debt.
Thirdly, it is -said that the agreement was to pay "whenever Stickney’s money is paid to him from Mr. Kennedy,” and that the money has never been so paid. The transac *214 tions between Stiólcney, his son-in-law Bornheimer, and Kennedy, in relation to the funds in the hands of the latter,appear to have been an attempt to evade a legal responsibility ; otherwise why should Kennedy give his note to the son and take the father’s receipt as a voucher, and as such presented to and received by the Probate Judge in the settlement of his administration? But the reason assigned is, that the administrator was unwilling to pay the money over to the lawful heir, because he was an aged person and not capable of taking care of it; but, at the same time, he was willing to take his receipt acknowledging payment to him as conclusive evidence in the Probate Court of such fact. Such a reason, under all the circumstances, would seem to be more ostensible than real. The note given to' the son instead of the money, with the consent of the father, as manifested by his receipt, was in legal contemplation a payment to the latter, and, on the happening of that event, the defendants’ promise became absolute.

Defendants defaulted.

Tenney, C. J., Rice, May, Goodenow and Davis, JJ., concurred.