# Westinghouse Electric & Manufacturing Co. *v*. Wilson, Appellant.

*Practice, Supreme Court—Paper books—Printing of evidence—Suppression of record.*

Where a case is tried twice, and after the second trial an appeal is taken in which the assignments of error relate wholly to what occurred at the second trial, the fact that the appellant prints in the appendix of his paper book the evidence taken at the first trial, is no ground for suppressing the record as violating Rule 17, Par. 10, of the Superior Court Rules.

*Principal and surety—Guaranty—Contract—Later instrument.*

Although a surety is usually bound with his principal in the same instrument at the same time, and on the same consideration, there is nothing in law which prevents one from becoming bound as surety in a separate instrument executed at a later time either under seal, or upon a new consideration, and there is nothing in reason for giving to these circumstances the effect of converting a clearly expressed engagement to pay the debt when due, if the principal debtor does not enter into a mere engagement to pay in default of solvency in the debtor.

Where a person executes a writing under seal in which he recites that "for a valuable consideration, the receipt of which is hereby acknowledged" he hereby guarantees "payment of the amount specified in a certain order" placed by a certain corporation on a prior date specified "in accordance with the terms and conditions recited therein," and the order specifies the time of payment, the obligation so signed will be construed as a contract of suretyship, and not a contract of guaranty.

*Principal and surety—Set-off—Counterclaim—Parties.*

Where a person is sued on a contract of suretyship he cannot set up as a defense a counterclaim for unliquidated damages which his principal has against the plaintiff, where such claim is greater in amount than that involved in the suit, and there is nothing to show that the claim had been assigned to the defendant, or that he has the consent of his principal to use it as a counterclaim.

Argued Oct. 13, 1915. Appeal, No. 79, Oct. T., 1915, by defendant, from judgment of C. P. No. 3, Philadelphia

Co., March T., 1912, No. 5300, on verdict for plaintiff in case of Westinghouse Electric & Manufacturing Co. v. G. Searing Wilson. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on a contract of suretyship. Before FERGUSON, J.

The facts are set forth in the opinion of the Superior Court.

The court charged in part as follows:

["As I have said, Mr. Wilson's contract is a primary and original contract of his own, and it being a contract of suretyship, the Westinghouse people are not obliged to sue the Lancaster Company and get a judgment against it; the Westinghouse Company could proceed against Mr. Wilson in the first instance, and ask him to pay the bill.] (10)

["Mr. Wilson signed a contract in which he agreed that he would pay the bill, and if the plaintiff delivered the goods he was obliged to pay the bill, and he cannot set up the defense that the plaintiff said it had the goods and would deliver them right away, because the paper which he signed said: 'The company (that is the Westinghouse Company) reserves the right to extend the time of the purchaser to make any payments by note or otherwise.' That means that the Westinghouse people could extend the time to the Lancaster people to pay their bill and such an act would not relieve Mr. Wilson, although it might otherwise have relieved him. The contract also said: 'And the time of shipment of said apparatus is whole or in part, without the consent of and without notice to the guarantor;' in other words, the Westinghouse people had the right to extend the time of shipment of the goods, and they had the right to extend the time when the Lancaster Company would be obliged to pay the bill, and Mr. Wilson could not complain about either one of those conditions. He signed the paper, and he

cannot say, 'Before I signed it we had an understanding that the goods were to be shipped to-day, or to-morrow, or immediately.' Of course, he can say it, but it does not amount to enough to relieve him from the contract which he entered into. That is the reason I can say that defense cannot be received.] (11)

["The other defense which Mr. Wilson offered is that the Lancaster Electric Company has sustained a loss by reason of the delay in the shipments. That is an unliquidated claim for damages which the Lancaster Company might set up against the Westinghouse Company. There is nothing in the law to prevent the Lancaster Company suing the Westinghouse Company for damages which it sustained by reason of the delay, and those damages would have to be proved and they would have to be assessed by a jury. They are unliquidated to-day. To be sure, there was an offer to prove them in this case, but they have not been liquidated yet. The damages have not been sustained by Mr. Wilson. His contract was to pay this bill if the Westinghouse Company delivered the goods, and the Westinghouse Company has delivered the goods and has not been paid for them, and Mr. Wilson has to submit to judgment."] (12)

Verdict and judgment for plaintiff for $1,398.18. Defendant appealed.

*Errors assigned,* amongst others, were (10-12) above instructions quoting them.

*Maurice Bower Saul* and *John G. Johnson,* for appellant.—The contract is clearly one of guaranty, and not suretyship: Donlevy v. Dobbs, 53 Pa. Superior Ct. 411; Hartley Silk Mfg. Co. v. Berg, 48 Pa. Superior Ct. 419; Snevily v. Johnston, 1 W. & S. 307; Zahm v. First Nat. Bank of Lancaster, 103 Pa. 576; Hartman v. First Nat. Bank, 103 Pa. 581; McBeth v. Newlin, 15 W. N. C. 129.

A surety may set up any defense in a suit against him

that may be lawfully set up by a principal: Sitgreaves v. Farmers, Etc., Bank, 49 Pa. 359; Roth v. Weisberger, 1 W. N. C. 4; Thorn v. Bayard, 9 Philadelphia 527; Stanley v. Barry, 16 W. N. C. 224; Peoples Bank of Wilkes-Barre v. Legrand, 103 Pa. 309; Wilkes-Barre v. Rockafellow, 171 Pa. 177; Crist v. Brindle, 2 Rawle 120; Balsley v. Hoffman, 13 Pa. 602; Hollister v. Davis, 54 Pa. 508; St. Michael's Beneficial Society v. Brannen, 1 Del. County 105.

*Lewis, Adler & Laws,* for appellee.—The contract in suit is one of surety: Riddle v. Thompson, 104 Pa. 330; Allegheny Light Co. v. Reinhold, 7 Dist. Rep. 385; Reigart v. White, 52 Pa. 438; McBeth v. Newlin, 15 W. N. C. 129; Hartley Silk Mfg. Co. v. Berg, 48 Pa. Superior Ct. 419; Woods v. Sherman, 71 Pa. 100; Roberts v. Riddle, 79 Pa. 468; Campbell v. Baker, 46 Pa. 243; Levering v. Willard, 2 Pennypacker 352.

In a suretyship the surety cannot set off against a suretyship obligation an independent claim for unliquidated damages which the principal might have for an amount greater than the suretyship debt, without the consent of the principal: First Nat. Bank, Etc. v. Tustin, 246 Pa. 151; Balsley v. Hoffman, 13 Pa. 602; Gillespie v. Terrance, 25 N. Y. 306; Osborne v. Bryce, 23 Fed. 171.

PER CURIAM, July 18, 1916:

As the assignments of error relate wholly to what occurred at the second trial of this case, and as the evidence given on the first trial throws no light on the questions thus raised, the printing of that evidence would seem to be more than the rule of court absolutely required, but it was not in violation of the rule, nor was it prejudicial to the appellee in any way. Therefore its motion to suppress the printed record is without technical or substantial merit and is dismissed.

The plaintiff's demand was for the agreed price of

goods admittedly sold and delivered by the plaintiff to the Lancaster Electric Light, Heat and Power Company. The liability of the defendant arises out of a written undertaking signed, sealed and delivered by him and accepted by the plaintiffs under these circumstances:

On April 17, 1910, the Lancaster company placed with the plaintiff a written order for certain electrical apparatus specified therein, at the specified price of $1,-117.25, and upon the express terms "net cash within 30 days from date of shipment, pro rata payments for partial shipments."

By letter dated April 19, 1910, the plaintiff acknowledged the receipt of the order, reciting its terms, but without formally accepting it or promising to fill it, and on August 8, 1910, shipped to the Lancaster company a small part of the goods. Later in that month the defendant, who was president of the Lancaster company inquired of Mr. Gibson, the plaintiffs representative, why the goods had not been delivered. The latter replied that owing to the reported financial condition of the Lancaster company, the plaintiff could not ship the goods unless the defendant personally would "guarantee the shipment." At first the defendant refused, but upon being assured that the goods were on hand and could be shipped immediately, he reconsidered and executed and delivered the paper in suit which reads as follows:

"WESTINGHOUSE ELECTRIC & MANUFACTURING COMPANY.

"Pittsburgh, Pa., August 25, 1910.

"For a valuable consideration, the receipt of which is hereby acknowledged, I, G. Searing Wilson, hereby guarantee payment of the amount specified in a certain order placed with the Westinghouse Electric & Manufacturing Company (hereinafter called the company), and Lancaster Elec. Lt., Ht. & Pr. Co., (hereinafter called the purchaser) dated April 13, 1910, for the sale of certain apparatus to the value of one thousand, one

hundred and seventeen 25-100 dollars, in accordance with the terms and conditions recited therein. This guarantee shall extend to any and all subsequent modifications of the original contract. The company reserves the right to extend the time of the purchaser to make any payments by note or otherwise, and the time of shipment of such apparatus, in whole or in part, without consent of and without notice of the guarantor.

"Witness,                    "G. Searing Wilson (Seal)
"John J. Gibson."

By letter dated August 29, 1910, the plaintiff notified the defendant of its acceptance of the Lancaster company's contract and the defendant's guaranty, and from time to time between that date and September 30, 1910, all of the goods (excepting one small shipment of November 22, 1910,) were shipped to and received and accepted by the Lancaster company.

1. The plaintiff contends that the paper in suit was a contract of suretyship, and therefore the right of action was complete upon nonpayment of the price of the goods when due. While the defendant's contention is that the contract was one of technical guaranty, and therefore the plaintiff was not entitled to recover in the absence of proof of diligent and unsuccessful effort to collect from the principal debtor or of proof that the latter was insolvent and such effort would have been fruitless.

It is argued that at the time of the signing of the contract in suit the plaintiff had already accepted the order of April 13, 1910, and, therefore, the plaintiff and the Lancaster company were then under preexisting obligations—the former to furnish the goods and the latter to pay the stipulated price. It is questionable whether this contention as to the time of the acceptance of the order is supported by the facts. But it is unnecessary to take up time in discussing the question. While the assumed fact that the undertaking was not entered into contemporaneously with the principal contract to which it related might have some bearing, if the question of

consideration were involved, (see Snevily v. Johnston, 1 W. & S. 307) it does not determine the nature of the undertaking. For although it may be true, as some writers say, that a surety is usually bound with his principal in the same instrument at the same time on the same consideration, there is nothing in law which prevents one from becoming bound as surety in a separate instrument executed at a later time, either under seal or upon a new consideration, and there is nothing in reason for giving to these circumstances, the effect of converting a clearly expressed engagement to pay the debt when due, if the principal debtor does not, into a mere engagement to pay in default of solvency in the debtor.

Nor does the question whether the defendant's engagement was of the former or latter nature depend wholly on the words of the contract, "I hereby guarantee payment of the amount specified" in the order, but the words "in accordance with the terms and conditions recited therein," have a very important bearing on the question. Having regard to those significant words and to the terms and conditions of the order thus made part of the defendant's undertaking, the instrument is to be construed as if it read; "I hereby guarantee payment of the amount specified in a certain order placed with the Westinghouse Electric and Manufacturing Company dated April 13, 1910, for the sale of certain apparatus to the value of $1,117.25 within thirty days from date of shipment." Such undertaking is essentially different from a general guaranty in that the instrument itself defines the time of default when the promisor is to pay or to see the debt paid: Cochran v. Dawson, 1 Miles 276; Girard Life Ins. Co. v. Finley, 1 Philadelphia 70; McBeth v. Newlin, 15 W. N. C. 129, and in many Pennsylvania decisions this distinguished feature of the undertaking has been held to make the obligor a surety notwithstanding in expressing the promise the word guaranty or guarantee was used: Campbell v. Baker, 46 Pa. 243, Roberts v. Riddle, 79 Pa. 468; Riddle v. Thompson, 104 Pa. 330; Iron City Na-

tional Bank v. Rafferty, 207 Pa. 238. These and other pertinent decisions were cited and reviewed by Judge MORRISON in Hartley Silk Mfg. Co. v. Berg, 48 Pa. Superior Ct. 419, and that case is itself directly in point. See also opinion of SHARSWOOD, J., in Woods v. Sherman, 71 Pa. 100, at page 104. The distinction was thus clearly pointed out and the underlying principle indicated in Campbell v. Baker, supra: "When a guarantee is general, that is, without having any of its terms fixed in the writing, the law adds the usual conditions that there shall be due and unsuccessful diligence used by the creditor to collect the claim from the principal, unless it appear that all diligence would be hopeless. But the law adds or implies no such conditions when the parties have themselves fixed the terms of the contract. They have done so in this instance. The guaranty is special of the payment of the note, 'when due' and it was broken by the nonpayment at maturity, and so the law seems to have been usually understood." There are cases wherein, by reason of the absence of the distinguishing feature to which we have referred, the contract has been construed to be a technical guaranty, but even in those cases the doctrine of Campbell v. Baker and the cases following in its lead is expressly recognized: Mizner v. Spier, 96 Pa. 533; Zahm v. First National Bank of Lancaster, 103 Pa. 576; and Hartman v. First National Bank of Lancaster, 103 Pa. 581. Thus in the two latter cases the words, "I hereby guarantee the payment of the within note without protest," were held to create the obligation of guarantor, not of surety, but the court said: "If he had undertaken 'to see the note paid' as in Amsbaugh v. Gearhart, 1 Jones 482; or had guaranteed payment 'when due,' as in Campbell v. Baker, 10 Wright 243, or 'according to its terms' (which is precisely the case before us) as in Roberts v. Riddle, 79 Pa. 468, it would have been a contract of suretyship and not of guaranty."

2. The defendant offered to prove that at the time the order was placed with the plaintiff it was known to

the latter that the Lancaster company was under contract with the Edison Electric Illuminating Co., to supply that company with electrical power, and owing to the unreasonable delay in deliveries by the plaintiff the Lancaster company was prevented from operating its plant for furnishing electrical power to the Edison company until April 2, 1911, and in consequence had suffered loss amounting to $4,156.00. It is pertinent to notice that the offer does not aver a breach of any express term of the contract as to time of delivery or as to any other matter. All the goods specified in the contract were delivered to and accepted and retained by the Lancaster company and there is no allegation or proof that any of them were not of the kind ordered or did not conform to the specifications or were defective in quality. In view of these considerations, the question of the admissibility of the offer is referable to the law of set-off and not to the law relating to total or partial failure of consideration. The attempt is to set off loss of profits the Lancaster company would have made out of its contract with the Edison company. The Defalcation Act of 1705 does not entitle the defendant to set up this counterclaim, because the cross demands lack the essential element of mutuality: Tagg v. Bowman, 99 Pa. 376; First National Bank of Shickshinny v. Tustin, 246 Pa. 151. But it is well settled that "wherever there is the practicability of avoiding circuity of action and needless costs, with safety and convenience to all parties, or where there is a special equity to be subserved, and no superior equity of third parties will be injured, a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute": Hibert v. Lang, 165 Pa. 439. Here, if the defendant pays the debt, he will be entitled to reimbursement from his principal, but in the absence of evidence of the principal's inability or unwillingness to reimburse him it is not apparent that the allowance of the set-off is necessary to subserve any special equity of the

defendant. And when it is remembered that the principal's claim which the defendant seeks to use as a set-off is greatly in excess of the debt for which he is sued, and that no certificate can be given in his favor for the difference, it is apparent that circuity of action and needless costs would not be avoided, except upon the unreasonable and unjust assumption that the principal would be estopped by a record to which it was not a party, and had no hand in making, from recovering the difference. Assuming that the principal would not be estopped, the inconvenience to the plaintiff which would result from splitting up the claim, thus subjecting it to the vexation and expense of defending what, practically, would be two actions for its recovery is worthy of consideration. Moreover the principal has rights which must be considered. The demand which the defendant assumes to assert in its behalf is one which it could waive, or set up as a counterclaim, if sued, or bring a separate action for; it was not for the surety to make the election or to do anything to impair its right of recovery in a separate action without the principal's consent: Gillespie v. Torrence, 25 N. Y. 306. The defendant does not hold this counterclaim of the Lancaster company by virtue of an assignment from that company, and there is no evidence, aside from the fact that he happens to be president of the company, that he has its consent to use it in the present action. This was not sufficient to raise the presumption of consent, and that the absence of consent is under many circumstances a material fact is shown in Jack v. Klepser, 196 Pa. 187, and the cases there cited. See also Balsley v. Hoffman, 13 Pa. 603, at page 611. Upon the same reasoning it has a bearing which cannot be disregarded in the present case.

Upon consideration of the nature of the counterclaim for unliquidated damages coextensive with the loss of profits, and of the rights, equities and convenience of all parties concerned, the conclusion is reached that the

court was right in rejecting it as not admissible under the statute or upon equitable principles.

The assignments of error are overruled and the judgment is affirmed.