THE W. T. RAWLEIGH COMPANY, a corporation of the State of Illinois, *v.* STEPHEN WARRINGTON, CLARENCE E. ABBOTT and ROBERT H. SWAIN.

368

(*March* 14, 1938.)

HARRINGTON, J., sitting.

*Houston Wilson* for plaintiff.

*Tunnell and Tunnell* for defendants.

Superior Court for Sussex County, Action of Assumpsit, No. 37, October Term, 1937.

HARRINGTON, J., delivering the opinion of the Court:

The question raised by the demurrer is whether, under the facts alleged, Clarence E. Abbott and Robert H. Swain can be joined as defendants in an action against Stephen Warrington on the contract executed by him and declared on by the plaintiff.

The answer to that question largely depends on whether, under their contract, Abbott and Swain are sureties for Warrington, or merely guarantors of the obligations assumed by him.

The defendants, also, claim, however, that in any aspect of the case the contract with the plaintiff, signed by Abbott and Swain, is separate and distinct from the contract with that company, signed by Warrington, and that they, therefore, cannot be sued jointly with him.

According to the ordinary meaning of that term, a surety is a person "who binds himself for the payment of a sum of money, or for the performance of something else for another, who is already bound for the same". 2 *Bouv. Law Dict., Rawle's 3d Rev.*, 3191; 50 *C. J.* 13, 16.

A suretyship is "an undertaking to answer for the debt, default or miscarriage of another, by which the surety becomes bound as the principal or original debtor is bound." 2 *Bouv. Law Dict., Rawle's 3d Rev.*, 3192; see, also, *Pingrey on Suretyship and Guaranty*, § 4.

As a general rule, it is, therefore, essential to the existence of a suretyship that there be a principal debtor

or obligor, and a valid and subsisting debt or obligation, for which the principal is responsible.[1] *Bernd v. Lynes, 71 Conn.* 733, 43 *A.* 189; *Eising v. Andrews, 66 Conn.* 58, 33 *A.* 585, 50 *Am. St. Rep.* 75; 2 *Bouv. Law Dict., Rawle's 3d Rev.,* 3192; 21 *R. C. L.* 946; 50 *C. J.* 16.

But while the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person, either contemporaneously or previously, his obligation to the creditor or promisee of the principal is direct, primary and absolute, and is, in no sense, conditional on the failure of the principal to pay his debt, or perform his contract, or on notice of such non-performance. *Bernd v. Lynes, 71 Conn.* 733, 43 *A.* 189; *Northern State Bank v. Bellamy,* 19 *N. D.* 509, 125 *N. W.* 888, 31 *L. R. A. (N. S.)* 149; *Pingrey on Sur. & Guar.,* § 4; 1 *Bouv. Law Dict., Rawle's 3d Rev.,* 1386; 2 *Bouv. Law Dict., Rawle's 3d Rev.,* 3192; 21 *R. C. L.* 946; 50 *C. J.* 74.

As was aptly and concisely said in *Pingrey on Suretyship and Guaranty,* § 4, *p.* 9, "The contract of a guarantor is collateral and secondary; that of the surety is direct; the guarantor contracts to pay, if, by the use of due diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and is so responsible at once if the principal debtor makes default."

Perhaps in most cases, a surety is a co-obligor or a co-promisor in a joint or joint and several obligation, along with the principal debtor, and is, therefore, bound with him by the same instrument, executed at the same time, and on the same consideration. *Northern State Bank v. Bellamy,* 19 *N. D.* 509, 125 *N. W.* 888, 31 *L. R. A. (N. S.)*

---

[1] See *Brown v. Melloon,* 170 *Iowa* 49, 152 *N. W.* 75, *Ann. Cas.* 1917C, 1070, 1073; *Butz v. U. S. Metal Products Co.,* 255 *Pa.* 53, 99 *A.* 169; 50 *C. J.* 30.

149; *Pingrey on Sur. & Guar.*, § 2; 1 *Bouv. Law Dict., Rawle's 3d Rev.*, 1386; 21 *R. C. L.* 946.

Where that relation exists, in the absence of some limiting clause in the contract, there is a precise identity of obligation on the part of both the principal and the surety, but this does not mean that they must be bound by the same instrument, or even by the same consideration. *Westinghouse Electric & Mfg. Co. v. Wilson*, 63 *Pa. Super.* 294; 21 *R. C. L.* 947; 50 *C. J.* 24, 26.

The sufficiency of the consideration to support the contract made by Abbott and Swain is not questioned, but perhaps I might state that, at least, when the instrument, which is claimed to create the relation of principal and surety, is not under seal, and is executed subsequent to and separate and apart from the contract of the principal debtor, like other contracts, a good and sufficient consideration is essential to its validity (50 *C. J.* 46, 49); and such consideration must usually be executory in character. *Edwards v. Jevons*, 137 *Eng. Reprint* 579; 50 *C. J.* 49. When, however, the suretyship contract, though not under seal, is made at the same time as the principal contract, and both contracts form parts of the same transaction, there need not be any consideration other than that moving between the obligee and the obligor under the principal contract. See *Westinghouse Electric & Mfg. Co. v. Wilson*, 63 *Pa. Super.* 294; *Faust v. Rodelheim*, 77 *N. J. L.* 740, 73 *A.* 491, 27 *L. R. A.* (*N. S.*) 189; *Savage v. Fox*, 60 *N. H.* 17; *Leonard v. Vredenburgh*, 8 *Johns.* (*N. Y.*) 29, 5 *Am. Dec.* 317; 50 *C. J.* 48. This contract was under seal, but that rule was apparently recognized in drawing it.

Persons liable on several and distinct contracts, although with the same person, cannot be joined as defendants in the same action. 1 *Woolley's Del. Prac.* 104; see, also, 1 *Woolley's Del. Prac.* 107; *Register v. Casperson*, 3 *Harr.* 289.

 Applying that rule, and notwithstanding the nature of the contract of a surety, it seems that at common law a principal and a surety could only be joined as defendants in the same action when their obligations were joint. *Pingrey on Sur. & Guar.*, § 1; *Tourtelott v. Junkin et al.*, 4 *Blackf. (Ind.)* 483; *Faust v. Rodelheim*, 77 *N. J. L.* 740, 73 *A.* 491, 27 *L. R. A. (N. S.)* 189; *Castner v. Slater*, 50 *Me.* 212; 50 *C. J.* 202. A surety, therefore, could not be sued jointly with the principal debtor when his obligation arose on a subsequent and entirely separate and collateral undertaking. *Pingrey on Sur. & Guar.*, § 1; *Tourtelott v. Junkin et al.*, 4 *Blackf. (Ind.)* 483; 50 *C. J.* 203.

 As the liability of a guarantor is merely secondary to that of the principal debtor he cannot be sued at law in the same action with the principal. *Northern State Bank v. Bellamy*, 19 *N. D.* 509, 125 *N. W.* 888, 31 *L. R. A. (N. S.)* 149; *De Ridder v. Schermerhorn*, 10 *Barb. (N. Y.)* 638; 1 *Bouv. Law Dict., Rawle's 3d Rev.*, 1386; *Pingrey on Sur. & Guar.*, § 4; 21 *R. C. L.* 949.

What may perhaps be termed the primary contract declared on by the plaintiff company is signed by Warrington alone, and the contract executed by Abbott and Swain is immediately under that contract and on the same sheet of paper. At the middle of the page, on the lefthand side of it, and opposite the signature of Warrington, the principal in the transaction, there is an acceptance by the plaintiff company, dated January 2, 1936, and it is not denied that this acceptance also applies to the contract signed by Abbott and Swain.

That part of the contract declared on, signed by Warrington, provides: That "In consideration of the promises of undersigned buyer, the W. T. Rawleigh Company, * * * agrees upon acceptance of this contract to sell and deliver * * * such reasonable quantities of its products as the

buyer may order, at current wholesale prices, and on time, * * * ; and the buyer, in consideration of the above agreements, hereby promises to pay seller in full for all such products so sold and delivered under this contract, also promises and agrees to pay any balance due seller at the date of the acceptance of this renewal contract for products previously sold buyer under any and all former contracts by cash, or by installment payments, satisfactory to seller, at invoice prices, and according to the terms and conditions thereof * * * and subject to such cash discounts as may be shown in current discount sheets.

"It is mutually agreed that either party may terminate this contract by written notice at any time and when so terminated all accounts incurred hereunder shall become due and payable immediately. If this contract is not so terminated it shall expire on the 31st day of December 1936 * * *".

This part of the contract is signed by Warrington alone.

That part of it, which is signed by Abbott and Swain, and which immediately follows the part signed by Warrington, in part, provides:

"For and in consideration of the W. T. Rawleigh Company accepting the above contract and/or in consideration of the above named seller extending further credit to the said buyer, and having read and acquainted ourselves with the nature, terms and conditions of this and the above agreement between the buyer and seller, we, the undersigned, do hereby jointly and severally enter ourselves as sureties and not as guarantors and unconditionally promise, guarantee and agree to pay said seller for any and all goods, wares and merchandise sold said buyer under the above and foregoing contract, hereby expressly consenting and agreeing to all the terms, conditions and provisions thereof; and we, also, specifically promise and agree to assume and pay any and all prior indebtedness that may be due and owing said seller on the date of the acceptance of this contract, as shown by seller's books for any and all goods, wares and merchandise previously sold to said buyer under and by virtue of any and all prior contracts or agreements; * * *. We hereby expressly waive notice of the acceptance of this contract and of the shipment of goods to the buyer and of extension of credit to the

buyer and of the extension of time in which to pay for the goods so purchased and waive all notice of any nature, whatsoever. * * * We also agree that it shall not be necessary for the seller to first exhaust its remedies against the buyer before proceeding to collect from us".

In a subsequent clause of the same contract, the persons signing it are not only described as the "undersigned sureties" but the words

"The sureties must sign in person"

(Sureties Names)

also appear above the signatures of Abbott and Swain. Under their signatures the following notation likewise appears "The sureties are entitled upon request at any time to a statement of buyer's account".

The contract of Warrington, the principal, provides that "When this contract is accepted by the seller it shall constitute and be the sole, only and entire agreement between all parties hereto * * *".

In that part signed by Abbott and Swain, they not only expressly consent and agree "to all the terms, conditions and provisions" of the Warrington contract, but the first and second counts of the declaration, also, allege that Abbott and Swain executed that part of the agreement signed by them simultaneously with the acceptance by the plaintiff of Warrington's contract, and in consideration of the plaintiff extending further credit to Warrington.

The third and fourth counts of the declaration allege that Abbott and Swain executed the agreement signed by them simultaneously with the acceptance by the plaintiff of the Warrington contract. They, also, set out the Abbott and Swain contract in full, including that part of it referring to the consideration and the assumption of the obligations of Warrington under his contract.

Whether Abbott and Swain are sureties, or merely guarantors of the obligations assumed by Warrington,

necessarily depends on the intent of the parties, as shown by the language used by them.

In that part of the contract declared on, signed by Abbott and Swain, they agree:

1. That they are sureties and not guarantors and "unconditionally promise, guaranty and agree to pay said seller for any and all goods, wares and merchandise sold said buyer under the above and foregoing contract, hereby expressly consenting and agreeing to all the terms and provisions thereof".

2. They, also, "specifically promise and agree to assume and pay any and all prior indebtedness that may be due and owing said seller on the date of the acceptance of this contract, as shown by seller's books".

3. They "waive notice of the acceptance of this contract and of the shipment of goods to the buyer".

4. They "also agree that it shall not be necessary for the seller to first exhaust its remedies against the buyer before proceeding to collect from us".

It is true that the word "guaranty" is used, but considering all of the provisions of their contract, my conclusion is that a suretyship, and not a guaranty, was intended. *News-Times Publishing Co. v. Doolittle,* 51 *Colo.* 386, 118 *P.* 974; *Castner v. Slater,* 50 *Me.* 212.

Though statutory provisions, relating to the joinder of parties, were involved, see, also, *Watkins Medical Co. v. Marbach,* 20 *Ga. App.* 691, 93 *S. E.* 270; *Brock Candy Co. v. Craton,* 33 *Ga. App.* 690, 127 *S. E.* 619.

Standing alone, the fact that Abbott and Swain were described as sureties might not be conclusive of the relation existing between them and Warrington, but, when considered with the other provisions of their contract, it is, also, of some importance in ascertaining the intent of the parties.

It is true that the provisions of the contract declared on in the instant case were somewhat similar to those involved in *J. R. Watkins Medical Co. v. Warrington, 7 Boyce 595, 110 A. 530.* In that case, the contract was in two parts; one part was signed by Warrington and the other part was signed by the persons who were claimed to be sureties. As in this contract, there was only one acceptance by the plaintiff in the action. On demurrer to the plaintiff's declaration, the court held that the alleged sureties were merely guarantors, and, therefore, could not be sued with the principal debtor, but the language of their contract was not in all respects identical to the contract before us. It did not contain the pertinent clause "We also agree that it shall not be necessary for the seller to first exhaust its remedies against the buyer before proceeding to collect from us".

In view of the facts alleged in the declaration, and the various provisions of the contracts declared on, though the obligations assumed by Abbott and Swain are set out and signed separately, my conclusion is that their undertakings constituted one and the same transaction, and were based on one and the same consideration. *Castner v. Slater,* 50 *Me.* 212; *News-Times Pub. Co. v. Doolittle,* 51 *Colo.* 386, 118 *P.* 974.

It is true that Abbott and Swain did not sign their names under the signature of Warrington but they expressly consented and agreed to all of the provisions of his contract, and promised and agreed to pay the seller for any and all goods, wares and merchandise sold him. They, also, specifically promised and agreed to assume and pay any and all prior indebtedness that might be due from Warrington to the plaintiff on the date of the acceptance of the contract. They were, therefore, jointly liable with Warrington and could be sued in the same action with him. *Castner v. Slater,* 50 *Me.* 212.

The plaintiff sued in assumpsit, though the contract declared on was under seal, but no question as to the form of the action was raised.

For the reasons above given, the defendants' demurrer to the plaintiff's declaration is overruled.