## Upper Dublin Township School District v. Simmers et al.

*Elmer L. Menges,* for plaintiff.

*Samuel H. High, Jr.,* of *High, Swartz, Flynn & Roberts,* for defendants.

KNIGHT, P. J., May 26, 1945.—On May 10, 1943, a judgment was entered in this court by the School District of Upper Dublin Township against Walter G. Simmers and the Globe Indemnity Company by virtue of a warrant of attorney contained in a bond. The damages were assessed at $9,328.99.

On November 12, 1943, a petition was presented on which a rule was allowed to show cause why the judgment should not be opened and the Globe Indemnity Company let into a defense. This rule was made absolute.

An agreement to try the case without a jury having been filed, the case was heard on January 23, 1945.

No evidence was heard as counsel filed a stipulation as to the facts. In making our findings of fact, we have used the language of the stipulation omitting the exhibits and putting the substance of them in our findings.

## Findings of fact

1. Walter G. Simmers was duly elected tax collector for the Township of Upper Dublin, Montgomery County, Pa., in the year 1921, and was reëlected in the years 1925, 1929, 1933, and 1937 to serve for a period of four years from the first Monday of January next succeeding his election, and as such a collector it became his duty to collect and account for the township, school and county taxes assessed against persons and property in said township.

2. The Globe Indemnity Company as surety joined with Walter G. Simmers, tax collector, as principal in a certain bond dated August 17, 1938, in the sum of $20,000, payable to the Commonwealth of Pennsylvania or its certain attorney, conditioned as therein fully expressed that the said Walter G. Simmers as collector of taxes for the School District of Upper Dublin collect, pay over and account for the taxes charged and assessed in the duplicate for the year 1938.

3. The Globe Indemnity Company as surety joined with Walter G. Simmers, tax collector, as principal in

a certain bond dated July 27, 1939, in the sum of $20,000, payable to the Commonwealth of Pennsylvania or its certain attorney, conditioned as therein fully expressed that the said Walter G. Simmers as collector of the taxes for the School District of Upper Dublin collect, pay over and account for the taxes charged and assessed in the duplicate for the year 1939.

4. The Globe Indemnity Company as surety joined with Walter G. Simmers, tax collector, as principal in a certain bond dated July 16, 1940, in the sum of $20,000, payable to the Commonwealth of Pennsylvania or its certain attorney, conditioned as therein fully expressed that the said Walter G. Simmers as collector of the taxes for the School District of Upper Dublin collect, pay over and account for the taxes charged and assessed in the duplicate for the year 1940.

5. The said Walter G. Simmers as such tax collector fraudulently misused and misappropriated tax moneys collected and received by him upon the school duplicate for the year 1940.

6. On August 21, 1941, the School District of Upper Dublin Township filed a proof of loss with the Globe Indemnity Company, claiming there was due it by the said Walter G. Simmers, tax collector, and by the Globe Indemnity Company, by reason of the bond dated July 16, 1940, it executed as surety for the said principal, the sum of $15,999.55 and interest.

7. On February 9, 1942, the School District of Upper Dublin Township filed another proof of loss with the Globe Indemnity Company, claiming there was due it by the said Walter G. Simmers, tax collector, and by the Globe Indemnity Company, by reason of the bond dated July 16, 1940, it executed as surety for the said principal, the sum of $7,569.93, with interest from June 1, 1941.

8. The Globe Indemnity Company did not accept and admit the correctness of any of the aforesaid proofs of loss.

9. On April 8, 1943, Anna and Ernest Evers caused to issue a writ of attachment execution to no. 25, April term, 1943, wherein the defendant was Walter G. Simmers and the garnishee was the Upper Dublin School District, and service of said writ was made upon the Upper Dublin School District.

10. On April 8, 1943, Paul and Edna Harton caused to issue a writ of attachment execution to no. 23, April term, 1943, wherein the defendant was Walter G. Simmers and the garnishee was the Upper Dublin School District, and service of said writ was made upon the Upper Dublin School District.

11. On April 8, 1943, Harvey and Josephine Stout caused to issue a writ of attachment execution to no. 24, April term, 1943, wherein the defendant was Walter G. Simmers and the garnishee was the Upper Dublin School District, and service of said writ was made upon the Upper Dublin School District.

12. On April 10, 1943, Walter G. Simmers, tax collector, authorized and directed the Upper Dublin School District in writing to pay moneys held by the school district belonging to Simmers to the following taxpayers in the amounts set opposite their names: 1937 tax, Harvey and Josephine Stout, $89.16; 1937 tax, Paul and Edna Harton, $98.75; 1937 tax, Anna and Ernest Evers, $30.06; 1937 tax, Fred Blessing, $5.15; 1937 tax, L. and Helen Parsons, $106.25; 1937 tax, Anna M. Hibschman, $40.73; 1937 tax, Elizabeth Dull, $271.26.

13. On May 10, 1943, by virtue of a warrant of attorney contained in the bond dated July 16, 1940, more specifically described in paragraph 4, supra, the School District of Upper Dublin Township entered judgment against Walter G. Simmers and the Globe Indemnity Company in the sum of $9,328.99, said judgment being recorded in judgment docket R-5, page 68, as of no. 135, April term, 1943.

14. That on May 11, 1943, said Walter G. Simmers notified the Upper Dublin School District in writing to apply a portion of the Simmers money in its hand for or on account of the payment of a judgment of $56.78 held by Charles F. Sacksie against the said Simmers.

15. That the said Walter G. Simmers, tax collector, filed a list of alleged unpaid taxes with the Commissioners of Montgomery County for 1941, but that said list was not first submitted to the Board of Directors of the Upper Dublin School District for approval or disapproval.

16. That on November 12, 1943, the Globe Indemnity Company filed its petition to open said judgment, and the court granted a rule on the said School District of Upper Dublin Township to show cause why the said judgment should not be opened, which rule by agreement of counsel was made absolute on April 24, 1944.

17. That the amount due the School District of Upper Dublin Township by Walter G. Simmers as determined by the auditors of the said township amounts to $8,369.14; and the Globe Indemnity Company does agree, but only as a basis for determining the amount due the said school district, that the said auditors are correct in amount, excepting for their failure to allow as credits the various amounts hereinafter set forth in findings nos. 19, 20, 23, 24, and 25.

18. That the Globe Indemnity Company received a copy of said audit.

19. At the time the said Walter G. Simmers was removed from office, the said School District of Upper Dublin Township had in its possession deposited in its treasurer's account moneys due the said Walter G. Simmers for commissions earned as tax collector amounting to $111.

20. That the School District of Upper Dublin Township in addition to commissions mentioned in finding

no. 19 has moneys in its possession deposited in its treasurer's account, representing commissions due the said Walter G. Simmers on collections made by the county treasurer in the sum of $273.14.

21. That on August 12, 1937, the Upper Dublin School District and the said Walter G. Simmers, tax collector, entered into a settlement covering all unsettled tax duplicates for the years 1933, 1935, and 1936, inclusive.

22. That under the provisions of the Act of May 27, 1937, P. L. 914, the said Walter G. Simmers as tax collector of Upper Dublin Township did on July 7, 1937, file returns with the county commissioners for taxes for the years 1929 to 1935, inclusive.

23. That the School District of Upper Dublin Township has in its possession deposited in its treasurer's account the sum of $838.11, received from the Treasurer of Montgomery County from collections on the return of July 7, 1937, to the county commissioners, which moneys were received subsequent to a default of Walter G. Simmers.

24. That the Treasurer of Montgomery County has collected and still retains the sum of $701.47, which amount was collected by reason of the return filed July 7, 1937.

25. That of the returns filed on July 7, 1937, it is estimated that a total of $719.05 are valid and enforcible liens on the several designated properties.

26. That no credit has been allowed the Globe Indemnity Company for the amounts indicated in findings nos. 19, 20, 23, 24, and 25.

27. Subsequent to the default of Walter G. Simmers, notice was given to the Upper Dublin School District of claims by various taxpayers, wherein payments of taxes were made to and received by Walter G. Simmers as tax collector, after he had returned the same to the Commissioners of Montgomery County. Said claims are as follows:

| Name | Year | Paid Simmers | Paid Treasurer |
|------|------|--------------|----------------|
| Fred Blessing ........ | 1937 | $3.26 | $5.15 |
| U. G. Funk .......... | 1939 | 65.00 | 83.94 |
| Charles H. Jones ...... | 1937 | 67.20 | 89.11 |
| Julia Gaskins ........ | 1937 | 14.97 | |
| | | 6.78 | 21.78 |
| Julia Gaskins ........ | 1939 | 17.51 | 29.28 |
| Thomas and Sophie E. Tressler ........... | 1937 | 6.13 | 7.97 |
| John W. Clark ........ | 1937 | 79.38 | 99.22 |
| Lawton H. and Helen Parsons ........... | 1937 | 84.00 | 106.25 |
| George Farrington .... | 1939 | 7.88 | 7.30 |

28. That on May 26, 1944, the Globe Indemnity Company forwarded to Elmer L. Menges, solicitor for the School District of Upper Dublin Township, its uncertified check of $5,000 to be applied on account of the claim of the said school district; the acceptance of which check was refused by the school district, but not because the check was uncertified.

29. On May 27, 1944, there was filed with the School District of Upper Dublin Township an assignment executed by Walter G. Simmers to the Globe Indemnity Company, assigning to said company all moneys in the possession of the school district belonging to Simmers, whether derived from commissions or the proceeds of liens for taxes.

30. On May 27, 1944, a like assignment was filed with the Commissioners of Montgomery County as to moneys due Simmers from Montgomery County.

The questions of law and fact involved are treated in the form of the following

### Discussion

As can readily be seen from the foregoing agreed facts, a number of interesting legal questions are presented. Briefly they may be stated as follows: (1) May a surety in a proceeding such as this assert against the

creditor in reduction of its liability a claim that its principal has against the creditor for cash or other credits in the latter's possession? (2) Are the attachments issued by, and the alleged assignments held by, certain other individual creditors of the principal valid; and if so are they entitled to a preference over the rights of the surety? (3) Was the check offered by the surety to the creditor a sufficient tender of partial payment, so as to defeat the right of the creditor to interest on the amount of said check after the date it was submitted?

The first of these questions is by far the most important and will be considered first.

The surety in admitting its liability contends that it is entitled to reduce the amount thereof by having applied in its favor certain funds and credits belonging to its principal and held by the creditor. As appears in the statement of facts, these funds or credits are of several varieties: (1) Cash commissions due the principal for taxes collected by him comprised in two items: (a) $111 due the principal for taxes collected by and properly accounted for by the principal; (b) $273.14 commissions due the principal on collections of tax liens by the county treasurer; these sums are actually held by the creditor. (2) The sum of $838.11 paid by the county treasurer to the creditor, being collections from tax liens filed by the principal. (3) The sum of $701.47 collected and still held by the county treasurer from tax liens filed by the principal. (4) The sum of $719.05 representing the estimated amount of valid and enforcible liens filed with the county treasurer by the principal.

The surety contends that it is entitled to have all four of the above items, totaling $2,642.77, applied against the loss suffered by the creditor either by way of a set-off, as a special equity in favor of a surety or by virtue of the assignment which it obtained from the principal.

As opposed to this contention, the school district, the creditor, argues that there can be no set-off because any claim of the principal arises from legislation and not from a contract, an element essential to the application of the doctrine of set-off; and further that no such application could be made of funds received after default by the principal, that certain of the funds are still in the hands of the county treasurer and therefore not available for the purpose, and finally that no credit can be allowed for such liens as have been filed but not collected.

These conflicting contentions require us to examine carefully into the relationship of principal and surety, and into the varied rights and liabilities among principal, surety, and creditor. Two of the equitable remedies that are always available to a surety who is compelled to pay the debt of his principal are the right of subrogation of a surety to the creditor's rights, and the right of reimbursement of a surety by the principal debtor for the loss the surety has suffered from his suretyship. And in 4 Williston, Contracts (Rev. ed. 1936) §1264, p. 3618, it is said:

". . . it is the duty of the court, especially a court of equity, to adjust the rights of the parties so far as possible, so that the ultimate loss shall accord with the equitable position of the parties."

The creditor has taken the position that the application of the doctrine of set-off is limited by certain rules, and that the respective claims between principal and creditor lack mutuality, especially as any claim in the principal arises by virtue of legislative action. This is certainly true and would be a valid objection, if we were held to a strict application of the Act of 1705, 1 Sm. L. 49, sec. 1; 12 PS §601. But we must bear in mind that there are in this case special equities in favor of the surety, and it has frequently been held that where there is a special equity to be subserved and no equity of third parties to be injured, a set-off will be allowed

upon equitable principles, although the case does not come within the language of the act: Harr, Secretary of Banking, v. Bankers Securities Corp., 129 Pa. Superior Ct. 547 (1938). Therefore, if there is a fair and just method of adjusting the rights of all parties, we shall not feel bound by the narrow limits of the Act of 1705, supra.

It goes without saying that the creditor is entitled to be compensated for every dollar of its loss, but it is likewise true that the surety should not be compelled to pay a dollar more than that loss. If the creditor had securities of the principal in its hands, it would undoubtedly apply their value in reduction of its loss. And a surety paying the loss in full would be subrogated to any of the creditors' rights therein: Lancaster County National Bank's Appeal, 304 Pa. 437 (1931); Beaver Trust Co. v. Morgan et al., 259 Pa. 567 (1918); Hawk, Exec., v. Geddis et al., 16 S. & R. 23 (1827).

Now if the surety has such rights in security pledged with or held by the creditor, why should it not have equal rights in money owed by the creditor to the principal, money of the principal held by the creditor and in money due to the creditor for the account or credit of the principal?

"If instead of having security, the creditor owes part of the amount to the principal, the effect of this is to secure the creditor, and the surety should by some procedure be allowed the benefit of it": 4 Williston, Contracts (Rev. ed. 1936) §1251, p. 3584.

We must remember that ordinarily a surety may not in defense or reduction of his liability set up a cross claim of the principal against the creditor, largely because to allow such practice might materially and adversely affect various rights that may exist between principal and creditor. See Westinghouse Elec & Mfg. Co. v. Wilson, 63 Pa. Superior Ct. 294 (1916). But where the principal has been made a party to the suit by the creditor against the surety (as here), and where

the principal has given his surety an assignment (as here), there can be no valid or practicable objection to permitting the surety to assert the principal's cross claim against the creditor, in order to protect the equity of the surety.

A close, though possibly inexact, analogy may be found in a number of Pennsylvania cases, where a holder of a note sues an endorser, having in its hands at time of suit collateral or deposits owed to the maker of the note. In Sitgreaves v. Farmers' and Mechanics' Bank, 49 Pa. 359 (1865), an accommodation endorser who was sued on a note was permitted to set up in defense the fact that the bank had misused certain collateral pledged with it by the maker. The court said at p. 364:

"Though it be true that an endorser is something more than a mere surety, and by virtue of that principle of the mercantile law which demands absolute punctuality, is as liable in the first instance as his drawer, yet where the equities set up are not merely those that exist betwixt the drawer and the endorser, but are such as touch the holder himself, why should they not be available by an endorser?"

In the Sitgreaves case, the cross claim sought to be set up was for misusing collateral of the maker. In Ramsey v. The Westmoreland Bank, 2 P. & W. 203 (1830), cited with approval and relied on in the Sitgreaves case, the cross claim was a sum of money not actually in the hands of the holder of the note who sued the endorser, but which was in the hands of the sheriff and could have been obtained by the holder had it exercised due diligence. The court said at p. 205:

"Here, to be sure, the bank had not the balance, actually in their hands, nor did they actually assent to its passing into the hands of *Johnston*, but they might, by using the diligence, and by doing their duty to the surety, have obtained it, and thus have had satisfaction

*pro tanto*, on their judgment . . . and it was their duty to do this."

The principle of the two cited cases was announced with approval in Peoples' Bank of Wilkes-Barre v. Legrand, 103 Pa. 309 (1883), where the court said by way of dictum at p. 316:

"We are not prepared to say, and do not hold, that when the bank has funds of the maker in hand, at the time of bringing suit, the endorser may not avail himself of the maker's right of set-off in defense. In such a case the equities of the maker touch the holder directly, and are available to the indorser."

In Commercial National Bank v. Henninger, 105 Pa. 496 (1884), it was held that a bank was under the duty to apply an unrestricted deposit by the maker of a note in payment thereof to the relief of a surety. In Mechanics' & Traders' Bank v. Seitz Bros., 150 Pa. 632 (1892), it was similarly held that where the bank holds funds of the maker when the note matures, it is bound to appropriate his deposit to the payment of the note in relief of the sureties, and a failure to do so to the loss of the sureties renders the bank liable, on the theory that "the maker is the principal debtor, and liable to all the endorsers, whose undertaking is to pay if he does not."

In First National Bank of Lock Haven v. Peltz, 176 Pa. 513 (1896), which decided a similar question, the court said (p. 517):

"While a bank which is the holder of a note, and has on deposit at the time of maturity a sum to the credit of any party liable to it on the note sufficient to pay it, and not previously appropriated by the depositor to be held for a different purpose, may apply the deposit to the payment of the note, yet it is not in general bound to do so. The cases where the right becomes a duty on the part of the bank rest on the special equity of the party, usually the indorser, to have the payment enforced against the depositor as the one primarily liable."

In Franklin Savings & Trust Co. v. Clark, 283 Pa. 212 (1925), the decisions in the above and other cases are discussed and analyzed. The court said at p. 217:

"An endorser is more than a surety after protest and notice. He is a principal debtor. But as between maker and endorser he is still a surety, entitled to a surety's right of subrogation and protection as to funds or property in the hands of the creditor. He is also entitled to the benefit and advantage of any remedy a creditor may have against the principal debtor; this right in reason should be preserved to him as long as payment of the debt by him remains a possibility."

Of course, practically all of the cases cited involve negotiable instruments, and admittedly different rules of law are applicable. But it cannot be denied that wherever by the facts of the situation the endorser has acquired the role of a surety, the court has been eager to protect what has frequently been called his "special equity". And after considering all these cases and considering the various rules surrounding the relationship of principal and surety, we cannot but conclude that the surety here should be permitted to assert against the creditor any valid claim or demand that could be asserted by the principal. It matters little whether or not such claim be designated as a "set-off"; the fact remains that there are funds in the hands of or readily obtainable by the creditor from the county treasurer. If the surety is not allowed a credit for such items, the school district will to that extent be overpaid. Such a procedure would not be equitable.

We have carefully limited this conclusion to the *funds* that are in the hands of the creditor, or that are presently payable to the creditor by the county. In all fairness to the school district, we cannot feel justified in allowing the surety *at this time* any credit for the uncollected liens, stipulated as being estimated at $719.05. True, these liens in that estimated amount are agreed to be valid and enforcible, but they may for

some reason not be collectible, and, therefore, we feel that the amount of these liens cannot now be used to reduce the amount due by the surety. When, as and if paid into the county treasury and thence to the school district, they should be used partially to reimburse the surety.

Two of the cases cited by plaintiff have convinced us of the propriety of this conclusion as to the liens. In Stewart v. Derry Township School District, 35 D. & C. 53 (1939), a tax collector had voluntarily paid to the district taxes which he had not collected. He did, however, file liens therefor. He sought by a bill in equity to have repaid to him those sums, or to have amounts credited to him against future remittances. The court held that he was not entitled to such refund or credit, but was of the opinion that when the school district received from the county treasurer such taxes or a portion thereof, then plaintiff would be entitled to recover such amounts. To the same effect is Ankney's Appeal, 35 D. & C. 601 (1939).

Therefore, to recapitulate our findings to the first of the questions enumerated at the beginning of this discussion, we are of the opinion that the surety is entitled to be presently credited with: (1) The cash commissions in the hands of the creditor; (2) the funds in the hands of the creditor being proceeds of liens collected by the county treasurer, and (3) the funds collected from liens and still held by the county treasurer; but is not presently entitled to a credit for liens on file, but which remain uncollected.

These conclusions, of course, are subject to our answer to question number two, which we now consider.

The principal defaulted on June 1, 1941. From that time on, negotiations between creditor and surety were carried on, the former filing proofs of claim with the latter. On April 10, 1943, in an attempt to prevent loss to certain taxpayers whose payments he had misappropriated, the principal in writing "authorized and di-

rected" the creditor to pay these several taxpayers specified amounts from "such moneys as you hold in your possession, to which I am entitled to as commissions or repayment for taxes which I have heretofore settled with you". Three of these taxpayers had two days previously issued and served the creditor as garnishee with attachments in execution on judgments confessed in their favor by Simmers.

On May 11, 1943, one day after the entry of judgment in this case, the principal gave the creditor a similar written authorization in regard to an eighth taxpayer. The claims of these eight taxpayers aggregate $698.14, and in the creditor's hands at the time the notices were received was money, either owed to principal in commissions or received in payment of liens, more than sufficient to pay the amount claimed. As has been noted, the surety filed its formal assignment with the creditors and with the county on May 27, 1944.

The first inquiry is whether these writings, fully set forth in exhibits "F" and "G" in the stipulation, are valid assignments in favor of the named taxpayers. The surety challenges the validity of these writings by contending that the funds involved were the property of the school district and not capable of assignment by the tax collector; and in any event the writings do not constitute valid assignments.

We are not impressed with the argument that the funds were the property of the school district. In the sense that a bank deposit becomes the money of the bank, the money belonged to the district, but as pointed out in our discussion above the tax collector was entitled to a credit therefor, and consequently we are of the opinion that he could assign it. Furthermore, the surety itself treated these very same funds as belonging, or at least owing, to Simmers either in cash or as a credit against this obligation, when it obtained from him an assignment in its own favor.

It is true that the documents are informal. But the intention is clear, the subject matter thereof is in existence and the intent to transfer to the respective taxpayers an interest in the fund or credit is plainly manifest. The indebtedness of the collector to the taxpayers is ample consideration. If not sustainable as legal assignments, they certainly are equitable assignments. See Moeser, Admr., v. Schneider, 158 Pa. 412 (1893) ; Nesmith v. Drum, 8 W. & S. 9 (1844).

In view of this, we consider these assignments as taking precedence over the later formal assignment to the surety. The surety's equity of subrogation would not prevail over the equities in these taxpayers, unless it had already paid the loss in full. See Lancaster County National Bank's Appeal, supra; Beaver Trust Co. v. v. Morgan et al., supra; Hawk, Exec., v. Geddis et al., supra.

Having so decided the matter of the assignments, it becomes unnecessary to give separate consideration to the attachments, which were issued by three of the taxpayers. This disposes of question number two.

We now come to the third and final question.

What was the effect of the offer of the $5,000 check by the surety in part payment? On May 26, 1944, slightly more than a year after the entry of judgment and about a month after the opening of said judgment by agreement, the surety offered the creditor a draft in the above amount as "payment on account of the claim of the School District of the Township of Upper Dublin against Walter G. Simmers and Globe Indemnity Company as surety for Walter G. Simmers under its bonds executed in favor of Commonwealth of Pennsylvania, relative to School District of Township of Upper Dublin 1938, 1939, 1940 Tax Duplicates. Balance of said claim is disputed and tender of this draft shall not constitute an acknowledgment of liability for the claim as filed." This draft or check was de-

clined by the district, but not because the offer was not in cash or by certified check.

The school district contends that the offer of this check was not a legal tender, and we agree, for, generally speaking, for an offer to have the effect of a legal tender, "nothing short of an offer of everything that the creditor is entitled to receive is sufficient": 62 C. J. §6, p. 660. Furthermore, it was not intended as a legal tender of the whole debt, for the draft bore the words "payment on account of the claim" and "balance of said claim is disputed". Consequently, we must look outside or beyond the law of "tender" for the answer to our question.

There are a number of cases in Pennsylvania which state that "a bona fide dispute as to the amount of the indebtedness is no bar to the accruing of interest, and if a tender falls short of the sum found to be due at the time of the tender, interest runs on the whole": J. Purdy Cope Hotels Co. et al. v. Fidelity-Phenix Fire Ins. Co., 126 Pa. Superior Ct. 260 (1937); West Republic Mining Co. v. Jones & Laughlin, 108 Pa. 55 (1884); McCornack v. Sharples, 254 Pa. 541 (1916); Wolverton's Appeal, 1 Sadler 59 (1885). But an examination of all these and other such cases discloses that in every instance the offer or "tender" made was of an amount which the debtor contended was the entire amount due.

Here we have an entirely different situation. Litigation is actually in progress. The debtor, in effect, says to the creditor: "I know I am indebted to you; I admit that I owe you at least $5,000, but we are disputing as to how much more I may owe you. So take this $5,000 on account until it has been judicially determined how much more I do owe."

Of course, such an offer does not relieve the debtor of $5,000 of his obligation. But should it not in all fairness relieve him of paying interest on that $5,000 after

the date of the offer? Certainly, a creditor can refuse to accept a payment on account and can insist upon full payment, but where as here there is a bona fide offer to pay a substantial portion of the claim, pending a future determination of the exact amount due, we believe the creditor has forfeited his right to interest on the amount offered after the date of the offer.

### Conclusions of law

1. Defendant, Globe Indemnity Company, is indebted to plaintiff.

2. Defendant as surety is entitled in reduction of its liability to assert against plaintiff any claim which its principal could have asserted in reduction of his debt.

3. The holders of assignments prior to that of defendant surety are entitled to a preference over the surety to the extent of the amounts assigned.

4. Plaintiff is not entitled to claim interest on $5,000 of its claim subsequent to May 26, 1944.

5. Plaintiff is entitled to a verdict against the defendant surety.

There should be entered by the prothonotary the following

### Decision

And now, May 26, 1945, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. A verdict is entered in favor of School District of Upper Dublin Township, plaintiff, and against Globe Indemnity Company, defendant, in the sum of $8,-552.20.

2. Defendant shall pay the costs.

The prothonotary shall give notice to the parties or their attorneys of this decision, and if no exceptions are filed within 30 days after service of such notice shall enter judgment on the verdict.