508 P.2d 805

Dorothy ADAMSON, for herself and her children, Plaintiffs and Appellants,

v.

OKLAND CONSTRUCTION COMPANY et al., Defendants and Respondents.

No. 12930.

Supreme Court of Utah.

April 4, 1973.

---

1. Section 48–2–26, U.C.A.1953.

Vlahos & Gale, Pete N. Vlahos, Ogden, Melvin M. Belli, San Francisco, Cal., for plaintiffs-appellants.

Raymond M. Berry, Salt Lake City, for defendant-respondent.

CROCKETT, Justice:

Plaintiffs, widow and minor children, sued Okland Construction Company for the wrongful death of Robert L. Adamson who was electrocuted on September 6, 1968, while doing electrical work in the construction of David O. McKay Hospital in Ogden, Utah. Upon the basis of the pleadings, depositions, affidavits and documentary evidence, the trial court granted defendant's motion for summary judgment, no cause of action. From the adverse judgment, plaintiff appeals.

Okland Construction Company, the general contractor for the construction of the hospital, entered into a subcontract on April 18, 1966, by which Winward Electric Services, Inc., agreed to make the electrical installations. Robert L. Adamson, the deceased, was employed as a journeyman electrician by Winward. At the time of his death, he was working alone in an aisle of the motor control center on the sixth floor of the hospital. For that reason the exact details of the occurrence are not known. The indications are that he was in a cramped working area, just

below an energized 480-volt transformer, apparently attempting to "fish" wire through a conduit, when he somehow came in contact with the transformer, resulting in the tragic accident.

The subcontract between Okland and Winward provided that Winward was to furnish workmen's compensation insurance for its own employees with the payment therefor included in the contract price. The plaintiffs, as the widow and two minor children of Robert Adamson, were awarded the appropriate statutory workmen's compensation benefits for his death.[1] In this case they seek to maintain a separate action against the general contractor Okland by reason of the provisions of 35–1–62 U.C.A.1953:

. (W)hen any injury or death for which compensation is payable under this title shall have been *caused by the wrongful act* or neglect *of another person not in the same employment,* . . . his heirs or personal representative *may also have an action for damages against such third person.*

Plaintiff complains that Okland was negligent in failing to take proper safety measures in regard to the transformer and the area in order to provide the deceased a safe place to work. Defendant pleads the defenses of: its own non-negligence; that the contributory negligence of the deceased was the sole cause of the accident; and, what we find to be controlling here: that it was not "another person not in the same employment" with the deceased within the meaning of Sec. 62 just quoted above.

. In the recent case of Smith v. Brown [2] we had occasion to consider a closely analogous situation. We there set forth the principles which should be considered in applying the Workmen's Compensation Act to such a problem: that the purpose of the act is to provide speedy and certain compensation for workmen and their dependents and to avoid the delay, expense and uncertainty which were involved prior to the act; and the concomitant purpose of protecting the employer from the hazards of exorbitant and in some instances perhaps ruinous liabilities. Those principles are applicable here and correlated to them is the proposition that the act should be liberally construed and applied to provide coverage and effectuate those purposes.[3]

■ Fundamental standards of justice dictate that it would be inconsistent to apply the act liberally in favor of the injured workman in order to find coverage by one employer on a project, and then to reverse that policy and adopt a restrictive view to exclude coverage of another employer on the project so that a suit could be main-

1. Sec. 35–1–68, U.C.A.1953.

2. 27 Utah 2d 155, 493 P.2d 994.

3. Ibid. and see e. g. M & K Corp. v. Industrial Comm. 112 Utah 488, 189 P.2d 132.

tained against him. Suppose, for example, a situation in which a workman was hired by a subcontractor (such as Winward) and was injured; and that the circumstances were such that there was no workmen's compensation coverage under Winward. In that situation the declared policy of the law of indulging a liberal application of the statute to see that there was coverage, would be directed toward the general contractor (such as Okland).[4] The part of the act governing that situation is Sec. 35–1–42:

> *Where any employer procures any work to be done* wholly or in part for him *by a contractor over whose work he retains supervision or control,* and such work is a part of process in the trade or business of the employer, such contractor, and all persons employed by him, *and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, . . . employees of such original employer.*

It does not seem open to doubt that "such work [electrical installation by Winward] is a part or process in the trade or business" of the general contractor Okland, that is, the construction of the hospital. The more vital question is whether the general contractor, Okland, having engaged Winward as a subcontractor, retained sufficient "supervision or control" over Winward that under the just quoted statute "all persons [deceased Adamson] employed by any such subcontractors [Winward] shall be deemed . . . employees of such original employer [Okland]." In this regard it should be kept in mind that the test to be applied is the *right* to supervise and control, and not necessarily the degree to which that right is in fact exercised.[5]

There are a number of pertinent facts shown without dispute which have a bearing on that problem, and which should be considered in the light of the principles stated above. The contract provides that if, in the opinion of Okland, the work of Winward did not proceed satisfactorily, then after appropriate notice, Okland had "the right if he so desires to take over the work of the Subcontractor in full . . ." As it seems would necessarily be the prerogative of the general contractor, it appears without dispute that Okland did in fact supervise the overall continuity and integration of work among the various subcontractors on the project. It had the right to direct the sequence of work by the subcontractors, to make changes in the work

4. That employees of subcontractors are generally held to be covered by workmen's compensation under coverage of the general contractor engaged in the same project of work. See Ann. 150 A.L.R. 1214 and cases therein cited.

5. Gallegos v. Stringham, 21 Utah 2d 139, 143, 442 P.2d 31; also see Parkinson v. Industrial Commission, 110 Utah 309, 172 P.2d 136.

**290**

done by them, and the right to order work stoppages. It is likewise undisputed that the employees of Winward did not have the right to control or shut off the electrical power, but this was under the control of Okland.

■ It is our opinion that the trial court properly analyzed the foregoing fact situation as coming within the principles set forth in the case of Smith v. Brown, supra. Consequently he was correct in rejecting the plaintiff's contention that Okland was a wrongdoer "not in the same employment" as the deceased; and in holding that therefore the workmen's compensation was plaintiff's exclusive remedy as against these employers.

In view of our conclusion just stated we see no reason to be concerned with the arguments of plaintiff as to whether or not an employer-employee relationship existed between defendant Okland and the deceased; and it is likewise unnecessary to give attention to the defendant's other defenses of its non-negligence and that the contributory negligence of the deceased was the sole proximate cause. (All emphasis added.)

Affirmed. Costs to defendant.

1. Nauman v. Beecher, 19 Utah 2d 101, 426 P.2d 621 (1967).

CALLISTER C. J., and TUCKETT, J., concur.

ELLETT, Justice (concurring in the result):

I concur in the result because I do not think there was any negligence shown on the part of the general contractor. However, I am not prepared to hold that an employee who may further the work of the general contractor is engaged in the same employment with the general contractor even when working under its general supervision.[1]

I am of the opinion that under the rules announced in the case of Peterson v. Fowler et al.,[2] the decedent in this case was not at the time of his death necessarily engaged in the same employment as was the general contractor and, therefore, a jury question would exist if there was any negligence on the part of the general contractor.

HENRIOD, J., concurs in the concurring opinion of ELLETT, J.

2. 27 Utah 2d 159, 493 P.2d 997 (1972).