**Daniel J. BENCE, Appellant (Plaintiff),**

**v.**

**PACIFIC POWER AND LIGHT COMPANY, a Maine Corporation, et al., Appellees (Defendants).**

**No. 5444.**

Supreme Court of Wyoming.

July 16, 1981.

---

Gary L. Shockey of Spence, Moriarity & Schuster, Jackson, signed the brief and appeared in oral argument on behalf of appellant.

Richard E. Day and Patrick J. Murphy of Williams, Porter, Day & Neville, Casper, signed the brief on behalf of appellees; and Day appeared in oral argument.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY, and BROWN, JJ.

BROWN, Justice.

The sole issue presented by this appeal is whether appellees are entitled to immunity from suit by virtue of the Wyoming Worker's Compensation Act. After examining the pertinent Wyoming laws, we have concluded that appellees are not immune from suit and, therefore, we reverse and remand the case for further proceedings.

Daniel Bence, appellant, brought this personal injury action against Pacific Power and Light Company and Idaho Power Company, appellees, after he was seriously injured in 1974 when he fell from a scaffolding while he was attempting to weld tubes on the waterwall of a boiler. At the time of the occurrence, Bence was employed by Bechtel Power Corporation as a welder-pipefitter and he was working at the Jim Bridger Power Plant located near Rock Springs, Wyoming. Bechtel Power Corporation had contracted with appellees to do work in connection with the designing, engineering and construction of the power plant. Appellees are the owners of the power plant.

Bence did receive worker's compensation after he was injured. However, while both contracts between appellees and Bechtel Power Corporation provided that Bechtel was entitled to receive "recoverable cost" which included "net costs of premiums for workmen's compensation," the record does not contain any evidence that appellees con-

tributed to the worker's compensation fund. In any event according to their agreement, any payment by appellees would have been made indirectly by way of reimbursement to Bechtel.[1]

Appellees filed a motion for summary judgment alleging that Bechtel was an independent contractor pursuant to one of the two contracts and, therefore, appellees did not owe a duty to appellant. The trial judge in his tentative opinion letter raised for the first time the question of whether appellees are immune from suit because they are David Bence's statutory employers. The trial judge went on to request additional briefs from the parties on this issue and he also indicated that he would allow appellees to amend their answer in order to allege the affirmative defense that worker's compensation is appellant's sole remedy.

After the trial judge received the additional briefs and appellees amended their answer, he granted summary judgment in favor of Pacific Power and Light Company and Idaho Power Company finding:

> "* * * [T]hat said defendants were the 'statutory employers' of the plaintiff, that the plaintiff obtained workmen's compensation benefits through his employer, the Bechtel Corporation, and that workmen's compensation is the sole and exclusive remedy of the plaintiff against the said defendants."

Appellant has appealed from that order.

■ The question of whether Pacific Power and Light Company and Idaho Power Company are employers within the meaning of the worker's compensation law is one of law. If an owner of a project is an employer, the employee's sole remedy is worker's compensation and the employee may not subject the owner to a common-law tort action. On the other hand, if the owner is a third party he is subject to a common-law tort action for the injuries sustained by the contractor's employee. In order to answer this question, we must look to the law of Wyoming.

A landowner at common law was not considered the employer of a workman hired by the person with whom the owner had contracted to develop his property. Here appellees contend that § 27–60(D), W.S.1957, of the Wyoming Worker's Compensation Act made owners statutory employers of the workmen; therefore, appellees are immune from the present action.

This court has held that immunity provisions in the Wyoming Worker's Compensation Act, will be narrowly construed. *Markle v. Williamson*, Wyo., 518 P.2d 621, 624 (1974); and *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981). As this court recently stated in *Barnette v. Doyle*, supra, p. 1352:

> "Worker's compensation laws were enacted during the later [sic] part of the nineteenth century in order to provide social insurance for victims of industrial accidents, and this compensation is not based upon fault or the breach of a duty owed by the employer to the injured employee. These laws were not enacted to abrogate existing common-law remedies that protected injured workers. * * * "

Because the Act was not intended to abrogate common-law remedies, this court has held that amending legislation must contain clear and precise language before common-law rights can be taken away. *Markle v. Williamson*, supra.

It is difficult to find in § 27–60(D), supra, any expression of legislative intent to destroy an injured worker's right to bring common-law negligence action against the owner of the premises. Nor do we find

---

1. We attach no significance to appellees' reimbursement arrangement with Bechtel. Appellees and Bechtel cannot limit appellant's cause of action against appellees by contract. *Johnson v. Coleman*, Ky., 288 S.W.2d 348 (1956); *Burden v. Elling State Bank*, 76 Mont. 24, 245 P. 958, 46 A.L.R. 906 (1926); 17 Am.Jur.2d, Contracts, § 294, p. 711; *Mitchell v. Atlas Roofing Manufacturing Company*, 246 Miss. 280, 149 So.2d 298 (1963). As a practical matter, the owner rather than the employer, ultimately pays for the worker's compensation premiums. We can see little difference between the owners in the case at bar who obligated themselves to make payments by reimbursement pursuant to an express contractual agreement and other situations where the contractor takes into consideration, as he surely would, worker's compensation costs when he makes a bid for any construction job.

such intent in any of the other pertinent Wyoming laws.

As originally enacted, Art. 10, § 4, of the Wyoming Constitution provides that "[n]o law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person." This section of the constitution was amended in 1914, so that the Wyoming Worker's Compensation Act, §§ 27–12–101 to 27–12–805, W.S.1977, could be enacted. The constitutional amendment provides:

" * * * The right of each employee to compensation from such fund [a compensation fund out of which compensation benefits are paid] shall be in lieu of and shall take the place of any and all rights of action against *any employer contributing as required by law to such fund* in favor of any person or persons by reason of any such injuries or death." (Emphasis added.)

The sections of the Wyoming Worker's Compensation Act that were in effect at the time of the occurrence and that are pertinent to this appeal are as follows:

" * * * The right of each employee to compensation from such funds [a compensation fund] *shall be in lieu of and shall take the place of any and all rights of action against any employer contributing, as required by law to such fund* in favor of any such person or persons by reason of such injury or death. * * * " (Emphasis added.) § 27–50, W.S.1957.[2]

"(D) * * * [I]n private work the contractor, prime or general, shall be responsible, primarily and directly to the industrial accident fund for all obligations against the total payroll of the work and for the amounts due it, and *the owner of the property affected by the contract shall be surety for such payments.*" (Emphasis added.) Section 27–60, W.S.1957.[3]

Appellees contend that since the owner under § 27–60(D) is obligated to contribute to the industrial accident fund if the injured worker's employer fails to make the required payment, the owner must be deemed the statutory employer of the worker. In support of this argument, appellees point to Professor Larson's treatise on Workmen's Compensation Law, Vol. 2A, § 72.31, p. 14–47 (1976), in which he states:

"Forty-three states now have 'statutory-employer or contractor-under' statutes—i. e., statutes which provide that the general contractor shall be liable for compensation to the employee of a subcontractor under him, usually when the subcontractor is uninsured but sometimes without reference to the insured status of the subcontractor, doing work which is part of the business, trade or occupation of the principal contractor. Since the general contractor is thereby, in effect, made the employer for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation and the great majority of cases have so held."

2. Section 27–50, W.S.1957, was amended in 1975 and this section, now § 27–12–103(a), W.S.1977, provides in pertinent part:

"The rights and remedies provided in this act [§§ 27–12–101 to 27–12–805], for an employee and his dependents for injuries incurred in extrahazardous employments are *in lieu of all other rights and remedies against any employer making contributions required by this act,* or his employees acting within the scope of their employment. * * * " (Emphasis added.)

3. Section 27–60(D), W.S.1957, was amended in 1975 and 1977; this section, now § 27–12–109(e), W.S.1977, provides:

"In private work a contractor who subcontracts all or any part of a contract is liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of compensation has secured the payment of compensation as provided for in this act. Any contractor or his carrier who becomes liable for compensation may recover the amount of the compensation paid and necessary expenses from the subcontractor primarily liable therefor."

Section 27–12–109(f) goes on to provide that in certain specified instances "[t]he owner of land shall be deemed a contractor when he contracts with another who shall be deemed a subcontractor."

When Professor Larson says "Forty-three states now have 'statutory-employer or contract-under' statutes," he has apparently included Wyoming because Wyoming is not listed as an exception in footnote 46, page 14–47. However, we do not believe that Larson has correctly classified Wyoming as a state that has statutory-employer or contract-under statutes, under § 27–60(D), W.S.1957.

Larson does not cite cases from states that provide that an owner is a "surety" nor does he refer to cases from states that have constitutional and statutory provisions granting immunity to "any employer contributing, as required by law to such fund." It appears, therefore, that the cases cited by Larson in support for granting immunity to statutory-employers are of no value because Wyoming's constitutional and statutory language is different from that of other states.

In addition Professor Larson goes on to note:

"* * * It is imperative to observe the exact statutory language used to describe the statutory employer, since it varies significantly from one jurisdiction to another. * * *." 2A Larson, Workmen's Compensation Law, supra, p. 14–57, n. 53.

As appellees' counsel states in his brief to this court "[T]here are as many different types of statutory employers as there are states." Furthermore, appellees have not cited any constitutional or statutory provisions in other states that are similar enough to Wyoming's worker's compensation law to be persuasive. Our own research has revealed that in a substantial number of states that have ruled that a principal contractor is a statutory employer, the applicable worker's compensation law specifically requires immunity.

For example, in *Honaker v. W. C. & A. N. Miller Development Company*, 285 Md. 216, 401 A.2d 1013 (1979), an injured employee of a roofing subcontractor brought a common-law tort action against the principal contractor who had hired the roofing company to install a roof on a house. The injured employee did receive worker's compensation benefits that were paid by the insurance carrier of his immediate employer. In affirming the summary judgment entered by the lower court in favor of the principal contractor the appellate court found that under the pertinent section of the Maryland Worker's Compensation Act, Code (1957), Art. 101, § 62, the contractor was a statutory employer and, therefore, immune from suit. This section of the Maryland Act, unlike our own law, specifically provides that:

"* * * [w]here compensation is claimed from or proceedings are taken against the principal contractor, then, *in the application of this article, reference to the principal contractor shall be substituted for reference to the employer * * *.*" (Emphasis added.) *Honaker v. W. C. & A. N. Miller Development Company*, supra, p. 1016.

Likewise, while the Utah Supreme Court has held that an injured employee who has received worker's compensation benefits may not maintain a negligence action against the general contractor, Utah's worker's compensation law is substantially different from our own law. Section 35–1–41 of the Act provided:

"*Where any employer procures any work to be done wholly* or in part for him *by a contractor over whose work he retains supervision or control*, and such work is a part of process in the trade or business of the employer, such contractor, and all persons employed by him, *and all subcontractors under him and all persons employed by any such subcontractors, shall be deemed, * * * employees of such original employer.*" (Italics in text.) *Adamson v. Okland Construction Company*, 29 Utah 2d 286, 508 P.2d 805, 807 (1973).

On the other hand, the Arkansas Supreme Court in *The Baldwin Company v. Maner*, 224 Ark. 348, 273 S.W.2d 28 (1954), refused to grant immunity to a prime contractor whose subcontractor had made the required compensation payments for the subcontractor's injured employee. In so holding, the court found that unlike other worker's compensation statutes that specifically provide that the prime contractor is

deemed the employer of its subcontractor's employees, the Arkansas law did not. The court refused to read a grant of immunity into the statute. Also, see *Prive v. M. W. Goodell Construction Co., Inc.*, 119 N.H. 914, 409 A.2d 1149 (1979); *Lawrence v. Yamauchi*, 50 Haw. 293, 439 P.2d 669 (1968); and *Laffoon v. Bell & Zoller Coal Company*, 65 Ill.2d 437, 3 Ill.Dec. 715, 359 N.E.2d 125 (1976), where these courts have held that their respective worker's compensation laws confer immunity only upon the immediate employer.

Our own § 27–60(D) provides that the owner is the "surety" for payments that are not made by the immediate employer. This section was enacted to protect the industrial accident fund against irresponsible or itinerant subcontractors by making prime or general contractors "primarily and directly" responsible to the fund. The industrial accident fund is further secured by making the owner of the property "surety" for all contributions to the fund. It does not provide that the owner is to be deemed the original employer of the workmen, nor does it in any other way specifically grant the owner immunity from suit. The statute does not grant immunity to those responsible for making payments to the fund nor does it say anything about granting immunity to those having a potential liability to the fund. The grant of immunity is set out in § 27–50, W.S.1957, and extends to "any employer contributing, as required by law."

As we have already discussed, *Markle* and *Barnette*, supra, hold that immunity provisions in the Worker's Compensation Act will be narrowly construed. Art. 10, § 4, Wyoming Constitution, § 27–50 and § 27–78,[4] W.S. 1957, speaking of immunity, grant such to any employer contributing, as required by law to such fund. Neither the constitution nor statutes specifically grant

immunity to a surety, guarantor, or general contractor who has contracted to reimburse the employer, who actually makes the payment.

Were we to hold that immunity extends to a surety, we would be extending immunity to someone who is not contributing as required by law but only has potential liability to contribute. This construction would violate what we have traditionally said about construction of the worker's compensation laws, that is, immunity provisions will be narrowly construed. If the theory urged by appellees were adopted it would logically follow that appellant's immediate employer (Bechtel) would not be entitled to immunity. The rationale being that Bechtel does not ultimately bear the cost of worker's compensation premiums; therefore, it should not enjoy an immunity that it has not paid for. Appellees' theory and its logical extension are contrary to the statutes.

Therefore, we find that the trial judge erred when he ruled that the appellees are statutory employers who are immune from suit.

Reversed and remanded.

RAPER, Justice, dissenting, with whom ROONEY, Justice, joins.

I dissent.

It is inconceivable to me that the owner and real contributor to the industrial accident fund is also exposed to a further liability as a "third-party defendant" in a tort action. The result reached by the majority is not only basically unjust but contrary to prevailing law. The claim of appellant is a case of biting the hand that feeds it.

The issue, as I understand it, is well summarized by the appellees:

> accordance with sections 34 * * * of this act, and such right and payment shall be in lieu of and take the place of any and all rights of action against *any employer contributing, as required by this act, to the industrial accident fund* in favor of any person or persons by reason of such injuries or death." (Emphasis added.)

---

4. "Each employee, who shall be injured in any of the extra-hazardous employments as herein defined, or the defendant family of any such injured workman, who may die as the result of such injuries, except in cases of injuries due solely to the culpable negligence of such injured employee, shall receive out of the industrial accident fund, compensation in

"Are the Appellees, as owners of property who contract with an injured workman's employer, and who, by contract, pay all costs of workmen's compensation premiums through that employer, and who, by statute, are sureties for the payment of workmen's compensation premiums to the State fund, considered as an 'employer' under the applicable Wyoming Constitutional and statutory provisions and thereby entitled to the immunity protection from suits by an injured workman?"

This court has not previously considered this question though it was fleetingly mentioned in *Texas Gulf Sulphur Company v. Robles*, Wyo., 511 P.2d 963 (1973). The issue could not be reached in that decision because the case had gone to trial and the defense of workmen's compensation coverage had not been plead in avoidance by the defendant. So, since this court does not consider questions not timely raised in the district court, it was unable to consider the issue in that case.

More background and facts in addition to those found in the majority opinion need to be set out in order to provide a better understanding of this case and to allow proper disposition of this appeal. The appellant Bence brought this action in the district court for recovery of damages for personal injuries arising during the course of his employment by the Bechtel Power Corporation (Bechtel) as a welder-pipefitter. The Bechtel Corporation was working pursuant to two separate contracts with the appellees, Pacific Power and Light Company and the Idaho Power Company, partners in the ownership and construction of the Jim Bridger Power Plant located near Rock Springs, Wyoming. The individual defendants in the action are co-employees of the appellant.

The first contract, dated October 17, 1969, provided generally that Bechtel was to do engineering and construction management services in building the power plant. Among other things, the contract provided:

"*ARTICLE III SERVICES TO BE PERFORMED BY BECHTEL*

"\* \* \* \* \* \*

"B. *Construction Management Services*

"BECHTEL shall perform construction management services as requested by OWNERS. Accordingly, BECHTEL shall, as OWNERS' agent, manage the construction of the Project in accordance with the approved drawings and specifications. The services to be furnished by BECHTEL hereunder in managing the construction of the Project shall include generally the following, as directed by OWNERS:

"1. Organizing, planning and administering the construction program as a whole.

"\* \* \* \* \* \*

"7. Providing advice and coordination as may be required, on labor relations and safety matters.

"\* \* \* \* \* \*

"*ARTICLE V CONTROL BY OWNERS*

"\* \* \* It is understood that, in connection with the \* \* \* management of the construction work, BECHTEL shall function solely as OWNERS' agent, subject always to the direction and control of OWNERS' authorized officers or their designated representatives. \* \* \*"

The second contract was dated February 12, 1971 and employed Bechtel to actually construct *portions* of the power plant. Under that contract appellees, as owners, agreed to acquire all licenses and permits and supply materials while Bechtel was to construct specified items of the power plant with labor, construction equipment and tools which it furnished. Article II, specified that:

"E. BECHTEL shall perform the construction as an independent contractor in an economical and workmanlike manner, in compliance with approved specifications, schedules and drawings."

Under both contracts appellees were to pay certain recoverable costs which included payroll and related personnel costs:

"Payroll costs and related expenses incurred by BECHTEL in accordance with

its established personnel policies including all salaries and wages of personnel, other than officers, engaged directly in the performance of the services, and all employee benefits and allowances for vacation, sick leave, holiday, and social and retirement benefits, all payroll taxes, *net cost of premiums for Workmen's Compensation* and Employers Liability Insurance, and other contributions and benefits imposed by any applicable law or regulation * * *." (Emphasis added.)

Counsel for all the parties entered into a joint pretrial statement which described how appellant's injury came about:

"This case is an industrial injury case. The Plaintiff, Daniel J. Bence, was an employee of the Bechtel Corporation. His job was that of a welder-boilermaker. In the early morning hours of September 27, 1974, Dan Bence was preparing to start to work at a point inside the No. 2 unit of the Jim Bridger Power Plant near Rock Springs. He was preparing to make welds on water wall piping which was a part of the internal workings of the boiler. He was working on a wooden scaffold which was attached to some vertical beams inside the boiler. While getting his tools ready to start his days work, Mr. Bence fell over the edge of the scaffolding through an opening which had been covered by a thin asbestos blanket-like material. He sustained substantial injuries to his chest, resulting in a crushed chest and a subsequent traumatic aortic aneurysm which required correc-

tive surgery, as well as injuries to his elbow, shoulders, and legs."

No question has been raised that appellant has not received the benefits of and been paid his entitlements under the Workmen's Compensation Law from monies in the state industrial accident fund. There appears to be no dispute that appellees reimbursed Bechtel under their contract for monies paid into the industrial accident fund for the payroll assessments required by the act.

At the time the contracts were entered into and the appellant was injured, § 27–60(D), W.S.1957, C.1967, the Workmen's Compensation Law provided:

" * * * in private work the contractor, prime or general, shall be responsible, primarily and directly to the industrial accident fund for all obligations against the total payroll of the work and for the amounts due it, *and the owner of the property affected by the contract shall be surety for such payments.*"[1] (Emphasis added.)

The district judge in a comprehensive opinion and supplemental opinion determined that the above language, coupled with the fact that the appellees did actually pay for workmen's compensation coverage, has the effect of giving the owner contracting for work to be, for all intents and purposes of the Workmen's Compensation Law, the employer and entitled to the immunity of an employer from a third-party suit. This makes sense.

Section 27–60, supra, was discussed by this court in *Wyoming State Treasurer v.*

---

1. Amended. See § 27–12–109(f), W.S.1977. The district judge did not see that the amendment changed the immunity of the owner, but this court need not decide that question. However, that section provides:

"(f) The owner of land shall be deemed a contractor when he contracts with another who shall be deemed a subcontractor:

"(i) To have work performed consisting of:

"(A) The removal, excavation or drilling of soil, rock or minerals; or

"(B) The cutting or removal of timber from land; or

"(ii) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of the owner or lessee. This sub-

section shall not apply to the owner or lessee of land principally used for agriculture."

For an interesting case which discusses a similar provision to (f)(ii) under which appellees may fall if that statute were applicable, see *Anderson v. Thorington Construction Company*, 201 Va. 266, 110 S.E.2d 396 (1959). Under such a statute a determination that owner is contracting out the work of his occupation would be made. See also *Hanna v. Cra, Inc.*, 196 Kan. 156, 409 P.2d 786 (1966) and *Hickman v. Farleigh*, 459 F.2d 790 (10th Cir. 1972), construing the Kansas statute with such a provision. The owner in a case such as the one before us would get the insurance *he* paid for, in that no tort action would be available.

*Gimlin*, Wyo., 403 P.2d 178 (1965) with respect to a county's relationship to an injured employee of a contractor. I believe that discussion gives some insight into the status of those who hire contractors to perform work rather than doing the work themselves. There, this court said:

"* * * The Workmen's Compensation Law, Ch. 198, § 6, S.L. of Wyoming, 1959 (§ 27–60, W.S.1963 Cum.Supp.), contemplates that on occasion a county will engage in 'extra-hazardous work in which workmen are employed for wages' *and that such work may be done under an agreement with a contractor.* The provision goes to some length to make certain that workmen engaged in such work are brought under the coverage of the law by the employer. The fact that the employer was engaged in an extra-hazardous occupation in performing its agreement had a definite bearing upon the status of the decedent at the time of the fatal accident." 403 P.2d at 181–182. (Emphasis added.)

I am convinced that the appellees were engaged in extra-hazardous work and they were insured against and granted immunity from third-party actions when they paid the cost of that insurance and were responsible for the coverage not only by contract but by statute.

When we view the concept of third-party actions, the immunity position of the appellees here becomes more understandable. As said in 2A Larson's Workmen's Compensation Law, § 71.10, p. 14–2:

"So, it is elementary that if a *stranger's* negligence was the cause of injury to claimant in the course of employment, the stranger should not be in any degree absolved of his normal obligation to pay damages for such an injury." (Emphasis added.)

Appellees are not "strangers" to appellant's employment, but have paid for his coverage

by workmen's compensation. By imposition of an obligation for amounts due the industrial accident fund, in that an owner of the property affected by the contract shall also be surety for such payments, § 27–60(D), supra, the owner as a "statutory employer" also becomes immune from third-party actions by an employee. In the particular situation before us, the appellees-owners not only reimbursed Bechtel for assessments payable to the industrial accident fund, but in the event Bechtel failed to pay, appellees had an original and primary liability to pay under § 27–60(D), supra. In *Markle v. Williamson*, Wyo., 518 P.2d 621 (1974)[2], this court held that there is reason to include a fellow employee as a person against whom a third-party action may be maintained in that he "is one who has contributed nothing to the compensation fund."

The term "surety" when used in the general sense as here, has not been defined by the Workmen's Compensation Law, other statutes[3] or by this court. What § 27–60(D), supra, says is that if the immediate employer of an employee undertaking to do work for the owner is unable to meet his responsibilities to the industrial accident fund, then those responsibilities devolve upon the owner. The injured workman is thus assured that regardless of fault, both the contractor and the property owner stand behind and secure the industrial accident fund for the benefit of the workman. Surely, since both contractor and the property owner are primarily liable to the industrial accident fund for payment of assessments, immunity from a third-party suit should inure in exchange.

While this court has apparently not defined "surety," many other courts have. A surety is something more than a guarantor. A surety is bound as an *original obligor*, while a guarantor is bound only on a collateral promise. *Stensvad v. Miners & Merchants Bank of Roundup*, Mont., 598

---

**2.** *Markle v. Williamson* must be read with care because it was 2–2–1 decision. Justice McIntyre was its author with whom Justice McEwan joined. Justice Guthrie, with whom Justice McClintock joined, concurred only in

parts of Justice McIntyre's opinion and dissented in part. Justice Parker dissented.

**3.** Title 38, W.S.1977, deals with rights and remedies of sureties under written instruments.

P.2d 1083, 1086 (1979). A contract of guaranty is secondary to undertaking of principal debtor while a contract of suretyship gives rise to a joint and several obligation of the principal and surety. *Beauchamp v. North American Savings Association*, Mo. App., 543 S.W.2d 536, 538 (1976). The obligation of a surety is direct not collateral. *W. T. Rawleigh Co. v. Warrington*, Del.Super., 199 A. 666, 667 (1938). Those definitions appear to be universal. See 40A West's Words and Phrases, p. 428 et seq., where surety and guarantor are distinguished. The original, primary and direct liability of a surety places appellees in the same status as Bechtel. Their obligation to pay assessments into the industrial accident fund are identical, and it follows that their immunity from third-party tort actions is identical.

It is the appellees who created the employment in which appellant was engaged. This work is designated as extra-hazardous, to-wit: "engineering works," § 27–56, W.S. 1957, C.1967, defined as "any work in * * * the erection, installing, repairing, or removing of *boilers*, furnaces, engines and power machinery * * *." (Emphasis added.) Section 27–49 I(g), W.S.1957, C.1967.

Section 27–49 II, W.S.1957, C.1967, defines words used in the act:

"(a) *'Employer'* means any person or body of persons, corporate or incorporate, and the legal representatives of a deceased employer or the receiver of a trustee of a person, corporation, association or partnership, municipality, county, school district, or the state;

"(b) *'Workmen'* means any person who has entered into the employment of or works under contract of services or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's usual trade or business, or those engaged in clerical work and not subject to the hazards of the business. * * *" [This subsection also states that as used in this act, "workman" and "employee" are synonymous.]

The immunity of employers here is created by Art. 10, § 4, Wyoming Constitution, implemented by § 27–50, W.S.1957, C.1967:

"Compensation herein provided for shall be payable to persons injured in extra-hazardous employments, as herein defined, or the dependent families of such, as die, as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Said compensation shall be payable from funds in the state treasury to be accumulated and maintained in the manner herein provided. *The right of each employee to compensation from such funds* shall be in lieu of and shall take the place of any and all rights of action against *any employer contributing*, as required by law to such fund *in favor of any such person or persons by reason of any such injury or death*. Sections 3–403 [1–1065], 3–404 [1–1066] and 57–427 [30–141], Wyoming Compiled Statutes, 1945, and all laws or parts of laws relating to damages for injuries or death from injuries or in anywise in conflict with this act are hereby repealed, as to the employments, employers and employees coming within the terms of this act." (Emphasis added.)

Appellees certainly fall within the statutory definition of employer and are contributing in favor of the employee, Bence. Without appellees, the particular work being done by appellant would not have been taking place, and appellees provided the funds to the industrial accident fund from which appellant has been paid for his injuries.

Section 27–49 II(a), supra, does not define an employer as being the one under whom the workman is *immediately* hired to do the extra-hazardous work. Section 27–78, W.S. 1957, C.1967 provides:

"Each employee, who shall be injured in any of the extra-hazardous employments as herein defined, or the dependent family of any such injured workman, who may die as the result of such injuries, except in cases of injuries due solely to the culpable negligence of such injured employee, shall receive out of the industrial accident fund, compensation in ac-

cordance with sections 34 [§ 27–79], 35 [§ 27–80], 36 [§ 27–81], 37 [§ 27–82], 38 [§ 27–83], 39 [§ 27–84], 40 [§ 27–85], 41 [§ 27–86], 42 [§ 27–87], 43 [§ 27–88], 44 [§ 27–89], 45 [§ 27–90], 46 [§ 27–91], 47 [§ 27–92], 48 [§ 27–93], 49 [§ 27–94], 50 [§ 27–101] and 51 [§ 27–95] of this act, and such right and payment shall be in lieu of and take the place of any and all rights of action against *any employer contributing*, as required by this act, to the industrial accident fund in favor of any person or persons by reason of such injuries or death." (*Emphasis added.*) Appellees employed Bechtel to do this particular work and by contract and law are an employer actually contributing to the industrial accident fund. There is nothing in the act which defines a contractor or a subcontractor as an employer.

In Oklahoma the surety relationship of the owner or "principal employer" is spelled out and a test to determine whether covered by workmen's compensation has been judicially adopted. The Oklahoma Supreme Court has, ever since 1948, followed that course. In *Mid-Continent Pipe Line Co. v. Wilkerson*, 200 Okl. 335, 193 P.2d 586 (1948), the pipeline company was engaged in the business of transporting crude oil through its pipelines. The plaintiff in that case was immediately employed by Pipe Line Service Company which had been engaged to install a "scraper trap" in the pipeline. He was injured in the doing of that work allegedly by the negligence of an agent of Mid-Continent. Mid-Continent was sued in a third-party suit. Mid-Continent claimed workmen's compensation coverage. The Oklahoma statutes set out in the opinion provided at that time, and apparently still do, that:

" * * * The independent contractor shall, at all times, be liable for compensation due to his direct employees, or the employees of any subcontractor of such independent contractor, and the principal employer shall also be liable in the manner hereinafter specified for compensation due all such employees. * * *

If it appears that the principal employer has failed to require a compliance with the Workmen's Compensation Law of this State, by his or their independent contractor, then such employee may also proceed in the same investigation or case against such principal employer. If it shall be made to appear in such proceeding that the principal employer has failed to require a compliance with this Act by his independent contractor then such principal employer shall be liable for all such injuries to employees of his independent contractor, or the subcontractor of such independent contractor. * * *"

This details a surety relationship. Wyoming's statute does not spell it out but says the same thing with one word, "surety."

The Oklahoma court concluded that the effect of that provision is that in a hazardous undertaking within the purview of the Workmen's Compensation Law, the principal employer (owner) is not liable in tort for an injury to an employee of an independent contractor when covered by workmen's compensation. The court went on to say that the existence of the liability of the owner, even though dependent upon a contingency, is still a liability to conform to the Workmen's Compensation Law and, when it has been conformed with by its contractor, immunity from third-party suits exists.

It is made more clear in subsequent Oklahoma cases that the test is that the work of the contractor must be a necessary part of and integral to the operations of the principal employer (owner) in order for the owner to have the immunity granted by participation in the workmen's compensation program and the right to a separate tort action is abrogated. *Creighton v. District Court of Seminole County*, Okl., 359 P.2d 581 (1961). In *Huffman v. Mobil Oil Corp.*, 554 F.2d 1361 (5th Cir. 1977), the law of Oklahoma is reviewed and the foregoing concepts adopted. See also, *Baker v. Hunn Roofing, Inc.*, 399 F.Supp. 628 (W.D.Okl.1975).

In Missouri the surety relationship is statutorily expressed somewhat differently. A person having work done on his premises which is an operation of the usual business carried on there is an employer. The statute (§ 287.040, R.S.Mo., 1978) in effect for

many years, in referring to workmen's compensation participation, concludes:

"4. In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors. All persons so liable may be made parties to the proceedings on the application of any party. *The liability of the immediate employer shall be primary, and that of the others secondary in their order,* and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. Such recovery may be had on motion in the original proceedings. No such employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer." (Emphasis added.)

An owner in Missouri is liable for payment of workmen's compensation benefits as a statutory employer. *Boatman v. Superior Outdoor Advertising Co.,* Mo.App., 482 S.W.2d 743 (1972). A statutory employer under Missouri law is protected from an action based on negligence and the exclusive remedy of an injured worker is workmen's compensation relief. *Maryland Casualty Co. v. Dondlinger & Sons Construction Co.,* 420 F.2d 1368 (8th Cir. 1970).

Other jurisdictions have held owners, in a position similarly situated as are appellees, to be general contractors and liable for assessments of workmen's compensation payments, depending upon the system in effect in the state. As employers, they thus would *not* be liable in third-party actions. For example, see *Slocum v. Lamartinier,* La.App., 369 So.2d 201 (1979) where a grocer undertook to rebuild a structure on his own account, using specialty subcontractors. Because he hired several contractors, he was considered to be in the construction business, a hazardous business, and was subject to payment of workers' compensa-

tion insurance benefits. In such a case the owner has immunity from third-party suits. *Owen v. Kaiser Aluminum and Chemical Corp.,* 417 F.2d 303 (5th Cir. 1969); *Roelofs v. United States,* 501 F.2d 87 (5th Cir. 1974), *reh. denied en banc* 511 F.2d 1402, *cert. denied* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975), construing Louisiana statutes.

The facts of *Slocum* are similar to those in the case before us. Bechtel is not the only contractor doing work in constructing the power plant. Appellees have engaged over twenty separate contractors to do various kinds of work in building the plant. The validity of this approach is even more striking when we see by the contract that the appellees, as owners, are furnishing the materials for the part of the project undertaken by Bechtel. It would be reasonable to therefore consider the appellees' partnership the contractor and Bechtel a subcontractor. Under § 27–60(D), supra, it is consistent that appellees be considered the prime or general contractor in that they do actually pay workmen's compensation benefits, even though through the separate accounts of various specialty firms. Further, construction under Wyoming law is a hazardous occupation. Section 27–56, W.S. 1957 C.1967.

Other jurisdictions have followed a similar approach. The question of the owner's separate liability has been overcome by finding the owner to be a general contractor. *Hosvepian v. Hilton Hotels Corporation,* 94 Nev. 768, 587 P.2d 1313 (1978); *Shackleton v. Santillo,* 50 A.D.2d 1017, 377 N.Y.S.2d 298 (1975); *Evans v. Hawkins,* 114 Ga.App. 120, 150 S.E.2d 324 (1966); *Clendening v. London Assurance Co.,* 206 Tenn. 601, 336 S.W.2d 535, (1960), reh. denied 337 S.W.2d 603; *Brothers v. Dierks Lumber & Coal Co.,* 217 Ark. 632, 232 S.W.2d 646 (1950).

The majority does not find helpful 2A Larson's Workmen's Compensation Law, § 72.31 [4] because of the many different

---

4. One of the problems with citation of 2A Larson's Workmen's Compensation Law, § 72.31 on the subject of "statutory employer" is that most of the cases there cited deal with the

relationships between contractors and subcontractors and not with situations in which the owner pays the contribution to the industrial accident fund. We are concerned with those

statutes creating "statutory employers." While there are many statutes in different language, they most generally are based on the same concept as that expressed in this opinion and legislatively intended to cover owners in the same posture as appellees.

One of the chief purposes of creating a liability for assessments in the owner is to protect the employees of financially irresponsible contractors and subcontractors and to prevent owners from relieving themselves of liability for workmen's compensation assessments by going through contractors. By imposing liability for workmen's compensation benefits on the owner, he is in fact and by law insured from third-party tort liability. That is the majority view.

The majority infers that a liberal construction be given the Workmen's Compensation Law in favor of the employee by narrowly construing immunity, but the court is not free under the guise of construction to extend the beneficial purposes of the act to situations that do not reasonably fall within the reach of legislative language. *Olson v. Federal American Partners*, Wyo., 567 P.2d 710 (1977) and cases there cited.

In *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981 (1918), this court went to great lengths to explain the innovative features of the Workmen's Compensation Law. The court discussed the evils the act was intended to cure stating it was in the nature of a compromise between industry and workers. It was held to be "more in the nature of accident insurance." This court then went on to quote favorably from *Stertz v. Industrial Insurance Commission of Washington*, 91 Wash. 588, 158 P. 256, 259 (1916):

"* * * ours is not an employers' liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. * * * All the features of an insurance act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. *He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. * * *"* (Emphasis added.)

The majority in the case now before us says the act provides insurance. But insurance is a two-way street. Insurance also protects the one who pays the premium. The appellees have paid the premium and are entitled to protection from the agonies of litigation, so colorfully described in a further quote by this court from *Stertz* at 25 Wyo. 542–543, 173 P. at 989:

"* * * * 'Our act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers' booty; the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it. All agreed that the blood of the workman was the cost of production; that the industry should bear the charge. By the working class, the new legislation was craved [sic] from a horror of lawyers and judicial trials. What they wanted, as this act expressly recites in its first section, was compensation, not only safe, but sure. To win only after litigation, to collect only after the employment of lawyers, to receive the sum only after months or years of delay, was to the comparatively indigent claimant little better than to get nothing. The workmen wanted a system entirely new.

owners who are in business of building power plants or any other hazardous work and instead of doing the work themselves employ various contractors to do work in their specialty fields. See 1C Larson's Workmen's Compensation Law, § 49.11.

It is but fair to admit that they had become impatient with the courts of law. They knew, and both economists and progressive jurists were pointing out, what is now generally conceded, that two generations ought never to have suffered from the baleful judgments of Abinger and Shaw.'"

The majority, by its footnote 1, places no significance on the contract between the parties. I disagree with that point of view. Not only were the appellees assuring appellant's rights to workmen's compensation coverage and benefits by specific contract, but also § 27–60(D) became a part of the contract by operation of law. Laws that subsist at the time and place of making a contract and where it is to be performed enter into and become a part of the contract as though expressly referred to and incorporated in its terms. *Tri-County Electric Assoc., Inc. v. City of Gillette,* Wyo., 584 P.2d 995 (1978). It was by the contract between appellees and Bechtel that appellant was employed. Specific attention is also called to the language of § 27–60(D) which refers to the "owner of the property affected by the contract." It is the contract that creates the relationship of "statutory employer," along with the statute. I do not rely upon the contract alone but it buttresses the statute.

An anomaly is created by the majority which demonstrates the inconsistency of its position. If any recovery is had against appellees and the other defendants, the appellant will be required to repay the industrial accident fund for its expenditure for his benefit in accordance with the statutory formula. Section 27–12–104(a)(i), W.S.1977. Bechtel's account within the fund will be credited accordingly and its assessments reduced. Under the terms of the contract between Bechtel and appellees, appellees reimburse Bechtel's *"net"* costs of workmen's compensation. Appellees will, therefore, eventually be credited not only with a part of what it had to pay for workmen's compensation but also what might be recovered in this action from them and appellant's co-workers, the other defendants.

This illustrates further the proposition that appellees are actually statutory employers. It is impossible to reasonably divorce appellees from workmen's compensation coverage and deny them their immunity.

The majority has not accorded appellees the protection for which they pay.

Fortunately, the majority is making law for only this case and any others of the same nature falling under § 27–60(D), W.S. 1957, C.1967, and it cannot be precedent under § 27–12–109(f), supra (fn. 1).

I agree with the district judge and would have affirmed.